## Seal Audio, Inc. v. Bozak, Inc.
### (12579)

Peters, C. J., Healey, Shea, Dannehy and Callahan, Js.

Argued January 8—decision released April 29, 1986

*Dwight O. Schweitzer,* with whom, on the brief, was *Edward Morelli,* for the appellant (defendant).

*Anthony M. Fitzgerald,* with whom was *Wick R. Chambers,* for the appellee (plaintiff).

SHEA, J. The principal issue presented by this appeal is whether General Statutes § 52-434 (a) (4), which provides for the appointment by the chief justice of qualified members of the bar of the state as state referees, violates provisions of our state and federal constitutions.

The plaintiff brought this action upon a note for $75,000 received as part of the consideration in a sale to the defendant of certain business assets. The defendant pleaded a special defense and also a cross complaint for damages, both of which claimed fraudulent representations by the plaintiff that had induced the defendant to make the purchase and to execute the note. After the case had been placed on the trial list, it was referred, suo motu, by the court, *Stoughton, J.,* to attorney Frederick W. Krug as a state referee appointed pursuant to § 52-434 (a) (4). It is undisputed that this reference was made without prior notice to the parties and that their express consent to the reference was never obtained. The parties, nevertheless, appeared for trial before the designated state referee, who conducted the trial and filed a report setting forth the facts found, the conclusions of law reached and a recommendation that judgment enter for the plaintiff to recover the amount due upon the note plus attor-

ney's fees, a total of $90,480. The state referee also filed a "memorandum of decision" explaining some of the findings and conclusions in the report. No motion to correct the report or objections to its acceptance having been filed pursuant to Practice Book §§ 438 and 440, the plaintiff moved for judgment thereon. At the hearing upon the motion, of which notice had been duly given, the defendant did not appear in order to raise its objections to the report. The court ordered that judgment enter in accordance with the report of the state referee.

It was not until the defendant filed its preliminary statement of issues in conjunction with its appeal from the judgment that any objection was raised to consideration of the case by attorney Krug as a state referee. The preliminary statement, as later amended, claimed that the appointment of attorneys as state trial referees pursuant to § 52-434 violates the provisions of our state constitution, article fifth, § 2, requiring that judges of the Superior Court be nominated by the Governor and appointed by the General Assembly, and § 6, prescribing that justices of the Supreme Court and judges of the Superior Court and Court of Common Pleas who have attained the age of seventy years and have become state referees may exercise judicial powers upon matters referred to them as state referees. The statement of issues also alleged violations of the "due process" clause of the fourteenth amendment to our federal constitution and of the analogous "remedy by due course of law" provision of article first, § 10, of our state constitution. In addition, the statement raised numerous claims of error in respect to the findings and conclusions of the referee. Essentially the same claims have been pursued by the defendant in its brief. We find no error.

I

Before discussing the merits of the defendant's claim that § 52-434 (a) (4) is unconstitutional, we must first

decide whether the failure to raise this contention in the trial court bars its consideration on appeal. "The supreme court shall not be bound to consider a claim unless it was distinctly raised at trial or arose subsequent to the trial." Practice Book § 3063. A recognized exception to this rule is that a challenge to the jurisdiction of a court to render a judgment may be raised at any time, because the lack of subject matter jurisdiction cannot be waived. *LaBow* v. *LaBow,* 171 Conn. 433, 440, 370 A.2d 990 (1976); *Connecticut Steel Co.* v. *National Amusements, Inc.,* 166 Conn. 255, 262–63, 348 A.2d 658 (1974). In *Monroe* v. *Monroe,* 177 Conn. 173, 177, 413 A.2d 819, appeal dismissed, 444 U.S. 801, 100 S. Ct. 20, 62 L. Ed. 2d 14 (1979), we regarded a collateral attack upon the authority of a state constitutional referee[1] to exercise the powers of the Superior Court in rendering a divorce decree as a challenge to "the power of the tribunal that adjudicated [the] case to hear and to determine the cause of action presented to it." The constitutional issues belatedly raised by the defendant in this appeal similarly implicate the authority of the adjudicative agency whose action was essential to rendition of the judgment. Accordingly, the failure to present these constitutional claims first to the trial court does not bar their consideration in this appeal.

---

[1] Article fifth, § 6, of our state constitution provides: "No judge or justice of the peace shall be eligible to hold his office after he shall arrive at the age of seventy years, except that a chief justice or judge of the supreme court, a judge of the superior court, or a judge of the court of common pleas, who has attained the age of seventy years and has become a state referee may exercise, as shall be prescribed by law, the powers of the superior court or court of common pleas on matters referred to him as a state referee."

The judges of the Supreme Court, Superior Court and former Court of Common Pleas who have reached the age of seventy and have been appointed as trial referees by the chief justice pursuant to § 52-434 (b) are authorized by article fifth, § 6, and by § 52-434 (a) to exercise judicial powers in cases referred to them. In this opinion the term "state constitutional referee" is used to designate such a state trial referee.

## A

The first ground advanced by the defendant to invalidate the appointment of attorneys as state referees pursuant to § 52-434 (a) (4)[2] is the requirement of article

[2] General Statutes § 52-434 (a) provides: "Sec. 52-434. . . . STATE REFEREES. (a) APPOINTMENT OF RETIRED JUDGES AND MEMBERS OF THE BAR. CASES REFERRED. (1) Each judge of the supreme court, each judge of the appellate court, each judge of the superior court and each judge of the court of common pleas who ceases or has ceased to hold office because of retirement other than under the provisions of section 51-49 shall be a state referee for the remainder of his term of office as a judge and shall be eligible for appointment as a state referee during the remainder of his life in the manner prescribed by law for the appointment of a judge of the court of which he is a member. The superior court may refer any civil, nonjury case or with the written consent of the parties or their attorneys, any civil jury case pending before the court in which the issues have been closed to such a state referee who shall have and exercise the powers of the superior court in respect to trial, judgment and appeal in the case. (2) Each judge of the circuit court who has ceased to hold office because of retirement other than under the provisions of section 51-49 shall be a state referee for the remainder of his term of office as a judge and shall be eligible for appointment as a state referee during the remainder of his life in the manner prescribed by law for the appointment of a judge of the court of which he is a member, to whom the superior court may, with the written consent of the parties or their attorneys, refer any case pending in court in which the issues have been closed and which the judges of the superior court may establish by rule to be the kind of case which may be heard by such referees. The referee shall hear any such case so referred and report the facts to the court by which the case was referred. (3) Each judge of the juvenile court who ceases or has ceased to hold office because of retirement other than under the provisions of section 51-49 shall be a state referee for the remainder of his term of office as a judge and shall be eligible for appointment as a state referee during the remainder of his life in the manner prescribed by law for the appointment of a judge of the court of which he is a member, to whom a judge before whom any juvenile matter is pending may, with the written consent of the child concerned, either of his parents or his guardian or his attorney, refer any juvenile matter pending. The referee shall hear any matter so referred and report the facts to the court for the district from which the matter was referred. (4) In addition to the state referees who are appointed pursuant to subdivision (1), (2) or (3) of this section, the chief justice may appoint, from qualified members of the bar of the state, as many state referees as he may from time to time deem advisable or necessary. No appointment of a member of the bar may be for a term of more than one year. Notwithstanding the provisions of sub-

fifth, § 2,[3] of our state constitution that judges of the Supreme Court and of the Superior Court be nominated by the Governor and appointed by the General Assembly. There is no such requirement for attorney referees, who are appointed solely by the chief justice in accordance with § 52-434 (a) (4).

The obvious response to this claim is that attorney referees are not judges of the Supreme or the Superior Courts, to whom the requirements of article fifth, § 2, are made applicable. More precisely, they are not judges at all. Even state constitutional referees, who are expressly authorized by article fifth, § 6, of our state constitution as well as by § 52-434 (a) (1) to exercise the powers of the Superior Court on matters referred to them, have been held not to be judges. *Florida Hill Road Corporation* v. *Commissioner of Agriculture,* 164 Conn. 360, 365, 321 A.2d 856 (1973). Such a state trial referee "is sui generis" and "sits as a special tribunal." Id., 362. "The state referee system, as a special tribunal, does not encroach upon, and does not unconstitutionally compete with, other constitutional courts." *Monroe* v. *Monroe,* supra, 180.

The defendant claims, however, that, because state constitutional referees, as former judges, were nominated and appointed in accordance with article fifth, § 2, at the time they assumed judicial office, the constitutional requirement has been fulfilled with respect to state referees within this category. No similar function is performed by the executive and legislative

section (f) of this section, state referees appointed by the chief justice from members of the bar shall receive such reasonable compensation and expenses as may be determined by the chief justice."

[3] Article fifth, § 2, of our state constitution provides: "The judges of the supreme court and of the superior court shall, upon nomination by the governor, be appointed by the general assembly in such manner as shall by law be prescribed. They shall hold their offices for the term of eight years, but may be removed by impeachment. The governor shall also remove them on the address of two-thirds of each house of the general assembly."

branches with respect to the selection of attorney state referees, who are appointed by the chief justice alone pursuant to § 52-434 (a) (4). The defendant also points to the enactment of two amendments to the statute following our decision in *Monroe* v. *Monroe, supra,* upholding the validity of a judgment rendered by a state constitutional referee. These amendments limited the duration of the appointment of a state constitutional referee to "the remainder of his term of office as a judge"; Public Acts 1980, No. 80-222, § 1; but also made him "eligible for appointment as a state referee during the remainder of his life in the manner prescribed by law for the appointment of a judge of the court of which he is a member." Public Acts 1979, No. 79-426, § 3. By thus imposing the requirement of reappointment by the General Assembly to successive terms of office for a state constitutional referee, the defendant maintains, the legislature has indicated its intention to retain its constitutional authority over the appointment of all those who act as judges under the title of state referee.

The defendant implicitly assumes that an attorney state referee performs the same function as a judge, but this assumption is wholly unfounded. Subdivision (4) of § 52-434 (a) does not vest such a referee with the authority to exercise the powers of a court, which is given only to state constitutional referees on matters referred to them by subdivision (1) as well as by article fifth, § 6, of the constitution. Having no power to render a judgment, an attorney referee is simply a factfinder whose determination of the facts is reviewable in accordance with well established procedures prior to the rendition of judgment by the court. Practice Book §§ 428 through 445. The rules of practice governing procedure in matters referred to committees are also

applicable to "state referees."[4] Practice Book § 428. A committee is obliged to report to the court "the facts found and the conclusions drawn therefrom," but the report may be supplemented with a "memorandum of decision including such matters as [the committee] may deem helpful in the decision of the case . . . ." Practice Book § 434. The attorney referee who heard this case filed such a report and memorandum of decision. A party may seek additions or corrections in the facts contained in the committee's report by filing a motion for that purpose. Practice Book § 438. The reviewing court must correct the finding where material facts have been found without evidence or in ambiguous language and also where undisputed facts have been omitted. Practice Book § 439. Before judgment is rendered upon the report, an opportunity for a hearing before the court is provided for the purpose of considering any objections or exceptions to the report. Practice Book § 442. The function of the court is ordinarily to "render such judgment as the law requires upon the facts in the report as it may be corrected." Practice Book § 443. The court, however, may resort to another procedure. "If the court finds that the committee has materially erred in his rulings or that by reason of material corrections in his findings the basis of his report

---

[4] It should be noted that Practice Book § 430 authorizes a "trial referee" to exercise the powers of the Superior Court in matters referred to him. "Any case referred to a trial referee shall be deemed to have been referred for all further proceedings and judgment, including matters pertaining to any appeal therefrom, unless otherwise ordered before or after the reference." Id. The term "trial referee" as used in § 430, therefore, includes only those constitutionally and statutorily authorized to render judgments, such as state constitutional referees and senior judges. See General Statutes §§ 52-434 (a), 51-50c (c), 51-50d, 51-50l. General Statutes § 52-434 (b) authorizes the chief justice yearly to designate "trial referees" from those falling within any of the four classifications of state referee created by § 52-434 (a), state constitutional referees, retired circuit court judge referees, retired juvenile court referees and attorney referees. We construe Practice Book § 430 to confer authority to exercise the powers of a court upon only those "trial referees" who are also state constitutional referees.

is subverted or that there are other sufficient reasons why the report should not be accepted, the court shall reject the report and refer the matter to the same or another committee for a new trial or revoke the reference and leave the case to be disposed of in court." Practice Book § 443.

Unlike subdivision (1) of § 52-434 (a), which expressly authorizes state constitutional referees to exercise the powers of a court, or subdivisions (2) and (3), which restrict state referees who are retired judges of the former Circuit and Juvenile Courts to reporting the facts they have determined after a hearing in cases referred to them, subdivision (4) does not specify the function to be performed by an attorney referee in a case referred to him. The most reasonable explanation for this omission is not that such attorney referees were to exercise judicial powers, which under subdivision (1), implementing article fifth, § 6, of our state constitution, may be delegated only to state constitutional referees, but that the legislature intended attorney referees to function in the same manner as committees appointed pursuant to General Statutes § 52-425,[5] whose determi-

---

[5] "[General Statutes] Sec. 52-425. APPOINTMENT OF A COMMITTEE IN CIVIL ACTIONS. (a) In any civil action pending in the superior court in which an issue of fact has been closed to the court, the court may, upon motion of any party to the record, appoint a committee of one, two or three disinterested persons to hear the evidence and report the facts to the court. A committee shall not be appointed without the consent of all parties appearing, unless the court, after a hearing upon the motion for appointment of a committee, is of the opinion that the questions involved are such as clearly ought to be sent to a committee.

"(b) If the action has been brought solely for the recovery of a money demand, the committee may: (1) Report simply that it finds the issue in favor of the plaintiff and that he recover a certain sum, or that it finds the issue in favor of the defendant, as the case may be, or (2) report specifically the facts relevant to the issue and established by the evidence. In all other actions, the committee shall report specifically the facts relevant to the issue and established by the evidence.

"(c) Upon the acceptance of any report, judgment shall be rendered thereon according to law and the facts found."

nations are subject to review by the court that renders judgment in accordance with that statute and the rules of practice. We cannot read into subdivision (4) the power to render judgments on the part of attorney referees because such authority is plainly restricted by subdivision (1) and by article fifth, § 6, to state constitutional referees. The only remaining mechanism for converting a determination made by an attorney referee into a judgment is the procedure established by the statute and the rules for reviewing the findings of a committee by the court which must render judgment. We presume that the legislature created the office of attorney referee as an alternative method of dispute resolution in order to alleviate court congestion. This salutary purpose could not be achieved without a means of implementing the findings of the attorney referee through a judgment. Since the only method available for translating the report of an attorney referee into a judgment is the established procedure applicable to the findings of a committee, we conclude that the legislature intended that procedure to be followed in matters determined by attorney referees.

This conclusion is further supported by a review of the process by which the attorney referee provision came into its present form as subdivision (4) of § 52-434 (a). The first authorization for the appointment of members of the bar as state referees appears in a 1955 amendment[6] to the then existing statute concerning references, which had provided that a judge of the Supreme Court, Superior Court, or Court of Common Pleas, "upon attaining the age of seventy years, shall be a state referee during the remainder of his life." Public Acts 1955, No. 453. The amendment substituted for

---

[6] Although authorization for the appointment of attorneys as state referees was created in 1955 by the enactment of No. 453 of the 1955 Public Acts, no appointments were actually made pursuant to this provision until February 1, 1984, when eighty-four attorney referees were sworn in.

the automatic appointment of state referees a provision authorizing the chief justice to appoint state referees for a term not to exceed one year "from among retired justices of the supreme court of errors, superior court or court of common pleas judges *or qualified members of the bar of the state.*" (Emphasis added.) Id. At the time of the amendment the statute allowed references to a state referee whose duty was only "to hear and report to the court the facts in such case." Id. In 1959 the legislature restored the provision automatically giving the status of state referee to retired judges of the Supreme, Superior and Common Pleas Courts, but allowed the chief justice to "designate as trial referees, from among the state referees, those to whom cases may be referred." Public Acts 1959, No. 363. The provision for appointment of members of the bar as state referees was retained and the limitation restricting all referees to hearing and reporting the facts to the court remained unchanged. Id.

The 1965 revision of our state constitution added a provision, article fifth, § 6, expressly authorizing judges of the Supreme, Superior and Common Pleas Courts who had become state referees to "exercise, as shall be prescribed by law, the powers of the superior court or court of common pleas" in matters referred to them. In 1967 the legislature implemented this constitutional change by providing that in cases referred to him a state referee "shall have and exercise the powers of the superior court or court of common pleas in respect to trial, judgment and appeal in such case." Public Acts 1967, No. 621, § 5. The previous restriction upon the function of a state referee, limiting the referee to hearing and reporting the facts of a case to the court, was deleted. Id. In 1971, however, when the statute was amended to permit retired Circuit Court judges to serve as state referees for cases referred by that court, a provision restricting such state referees to reporting

the facts to the court was included. Public Acts 1971, No. 720. A similar restriction was imposed upon retired Juvenile Court judges when they were made state referees to whom matters pending in the Juvenile Court could be referred. Public Acts 1973, No. 73-282. In 1982, through an omnibus technical revision of Title 52 of the General Statutes, § 52-434 (a) assumed its present form containing four subdivisions separately relating to the four classifications of state referees that had previously been created, constitutional state referees, retired Circuit Court judge referees, retired Juvenile Court judge referees and attorney referees to be appointed by the chief justice. Public Acts 1982, No. 82-160, § 167.

From this statutory history we glean that the legislature, in expanding the function of a constitutional state referee referred to in subdivision (1) of § 52-434 (a) from the role of factfinder to that of an official vested with the full powers of a judge in matters referred to him, did not intend that modification to apply to state referees authorized by the remaining subdivisions, including attorney referees. The statutory expansion of the powers of constitutional state referees was made in order to effectuate the increase in their authority sanctioned by the 1965 revision of our state constitution. In 1955, when provision was first made for attorney referees, the statute plainly described the duties of all state referees as those of a factfinder. None of the subsequent amendments to the statute have related specifically to attorney referees. We find, therefore, no intention on the part of the legislature to alter the function of an attorney referee from that of a factfinder, as the statute provided when this office was first created.

Our conclusion that attorney referees are confined to the role of factfinders, like committees appointed pursuant to § 52-425, is sufficient to provide an ade-

quate basis for rejecting the claim of the defendant that the requirements of nomination by the Governor and appointment by the legislature in article fifth, § 2, of our state constitution are applicable to such state referees. See *Northern Pipeline Construction Co.* v. *Marathon Pipe Line Co.,* 458 U.S. 50, 73–86, 102 S. Ct. 2858, 73 L. Ed. 2d 598 (1982). Even in cases of private right involving only the liability of one individual to another, "there is no requirement that, in order to maintain the essential attributes of judicial power, all determinations of fact in constitutional courts shall be made by judges." *Crowell* v. *Benson,* 285 U.S. 22, 51, 52 S. Ct. 285, 76 L. Ed. 598 (1932). "While the reports of masters and commissioners in such cases are essentially of an advisory nature, it has not been the practice to disturb their findings when they are properly based upon evidence, in the absence of errors of law, and the parties have no right to demand that the court shall redetermine the fact thus found." Id., 51–52. Even in criminal cases the determination of factual issues related to a motion to suppress by a magistrate appointed to hold a hearing for that purpose, with provision for review by a judge similar to the procedure prescribed by the rules of practice for committee reports, has been held not to encroach upon the constitutional authority of the judiciary. *United States* v. *Raddatz,* 447 U.S. 667, 681–84, 100 S. Ct. 2406, 65 L. Ed. 2d 424, reh. denied, 448 U.S. 916, 101 S. Ct. 36, 65 L. Ed. 2d 1179 (1980). This court long ago held that committees appointed "to report the facts to the court for judicial action, rather than to act judicially themselves," are not judges. *Groton and Ledyard* v. *Hurlburt,* 22 Conn. 178, 190 (1852). Because they are not judges they are not subject to the requirements for judicial office imposed by article fifth of our state constitution. *Betts* v. *New Hartford,* 25 Conn. 180, 186 (1856). We conclude that § 52-434 (a) (4) in providing for the appointment of

attorneys as state referees, subject to the constraints imposed by the statutes and rules of practice for committees, does not conflict with the requirements of article fifth, § 2, for the appointment of judges because such referees are not empowered to function as judges.

B

The defendant also claims a violation of article fifth, § 6, of our state constitution, which provides that constitutional state referees, the former judges of the Supreme, Superior and Common Pleas Courts, may exercise the powers of the Superior Court or Court of Common Pleas on matters referred to them. As the defendant contends, an attorney referee appointed pursuant to § 52-434 (a) (4) could not constitutionally exercise the judicial powers that are expressly limited by article fifth, § 6, to constitutional state referees. The statutory provision for attorney referees cannot reasonably be construed to grant such powers, however, and accordingly does not transgress the section of the constitution relied upon. We have concluded that attorney referees, unlike constitutional state referees, are confined to the factfinding function because of this constitutional provision as well as the statutory history of § 52-434 (a) (4). Accordingly there is no basis for claiming that the statute, as we have construed it, conflicts with article fifth, § 6.

A related claim of the defendant is that the attorney referee unconstitutionally exceeded the scope of his authority as a factfinder by including in his report to the court certain conclusions of law and also by submitting a memorandum of decision. Although General Statutes § 52-425, authorizing the appointment of committees "to hear the evidence and report the facts to the court," makes no reference to any additional duties, our rules of practice allow a committee to express his views upon questions of law. "The committee may

accompany his report with a memorandum of decision including such matters as he may deem helpful in the decision of the case . . . ." Practice Book § 434. The fact that the attorney referee went beyond the bare statutory requirement of reporting the facts found by including his opinion upon the legal issues involved in the case did not transform his role into a judicial one. The views of a committee upon the law carry no more force than those of the parties in their arguments at the hearing before the court that is to enter judgment. See *Lyon* v. *Wilcox,* 98 Conn. 393, 396, 119 A. 361 (1923); *Stehlin-Miller-Henes Co.* v. *Bridgeport,* 97 Conn. 657, 665, 117 A. 811 (1922). "The court shall render such judgment as the law requires upon the facts in the report as it may be corrected." Practice Book § 443. The reviewing court is the effective arbiter of the law and the legal opinions of a committee, like those of the parties, though they may be helpful, carry no weight not justified by their soundness as viewed by the court that renders judgment.

### C

The defendant's claim of a due process violation in the referral of cases to attorney referees invokes both the fourteenth amendment to our federal constitution[7] and the analogous provisions of article first, § 8, of our state constitution.[8] The defendant does not differentiate between them, however, by asserting greater rights under our state constitution than those available under

---

[7] The pertinent provision of the fourteenth amendment to the federal constitution is that no state shall "deprive any person of . . . property, without due process of law."

[8] The defendant in its brief refers to the due process provision of our state constitution as "Article First, Section 3." Article first, § 3, protects the right of religious liberty. We assume that the defendant intended to refer to article first, §§ 8 or 10, both of which have been construed to provide due process protection for property rights. *Williams* v. *Bartlett,* 189 Conn. 471, 477, 457 A.2d 290 (1983); *Ledgebrook Condominium Assn., Inc.* v. *Lusk Corporation,* 172 Conn. 577, 581, 376 A.2d 60 (1977).

our federal constitution. See *Cologne* v. *Westfarms Associates,* 192 Conn. 48, 57–58, 469 A.2d 1201 (1984); *Horton* v. *Meskill,* 172 Conn. 615, 649–50, 376 A.2d 359 (1977). Its argument expressly contends that our state due process provisions "have the same meaning" as those of the federal constitution.

Succinctly stated, the defendant's due process claim is that "a party ordered, without choice or consent, to appear before an attorney acting as a trial referee [suffers] an infringement of the party's constitutional right to due process." We are not aware of any authority, and the defendant cites none, that even arguably supports the proposition that reference of a nonjury civil case to a nonjudicial agency to find facts and make recommendations on legal questions violates the right to due process of law so long as these determinations can be adequately reviewed in a judicial forum under procedures similar to those provided by our rules of practice. See Practice Book §§ 428 through 443. The United States Supreme Court has rejected a claim that federal due process protection requires a trial judge personally to hear the testimony of witnesses in order to determine contested factual issues relating to the admissibility of incriminating statements of a defendant in a criminal case. *United States* v. *Raddatz,* supra, 677. The widespread use of magistrates in the federal courts to find facts and recommend decisions has been upheld in the rare instances where it has been claimed to violate due process. Id.; *Coolidge* v. *Schooner California,* 637 F.2d 1321, 1325 (9th Cir.), cert. denied, 451 U.S. 1020, 101 S. Ct. 3011, 69 L. Ed. 2d 392 (1981); see *Mathews* v. *Weber,* 423 U.S. 261, 269 n.5, 96 S. Ct. 549, 46 L. Ed. 2d 483 (1976). It is unnecessary to discuss this constitutional claim further, however, because it is predicated on the erroneous assumption that the statutes authorize a court to refer a case to an attorney referee without consent of the parties.

It must be conceded that the omission from subdivision (4) of § 52-434 (a) of any provision requiring consent for a reference to an attorney referee, while such a provision is contained in subdivisions (2) and (3) for references to former Circuit Court and Juvenile Court judges, tends to support the defendant's assumption on the basis of the maxim, inclusio unius, exclusio alterius. Our review of the statutory history of § 52-434 (a) (4), however, has brought us to the conclusion that the legislature never intended to enlarge the role of an attorney referee beyond that of a factfinder, despite an analogous omission of any such limitation in subdivision (4). A similar review of the history of § 52-434 (a) in respect to the consent requirement persuades us that the legislature never intended that § 52-434 (a) permit referrals to anyone but a constitutional state referee without the consent of the parties.[9]

---

[9] We are not unmindful that at the 1982 session when the requirement of consent for references to state constitutional referees was removed by enacting No. 82-392, § 2, of the 1982 Public Acts, effective May 27, 1982, the legislature also adopted No. 82-441, § 1, of the 1982 Public Acts, effective July 1, 1983, which authorized the judges of the Superior Court to make rules providing a procedure for reference to a factfinder of any contract action where the amount in demand is less than $15,000 and no timely claim for a jury trial has been filed. General Statutes § 52-549n. Number 82-441, § 1, of the 1982 Public Acts, supplanted a provision for arbitration of civil actions in which the amount in controversy did not exceed $5000 that were referred for arbitration pursuant to a written agreement of the parties. Public Acts 1981, No. 81-462, § 8, effective July 1, 1982. The rules adopted by the Superior Court judges to implement No. 82-441, § 1, of the 1982 Public Acts, which became effective on July 1, 1983, contain no requirement that the parties consent to a reference to a factfinder but authorize the court to make such references "on its own motion." We do not regard these provisions concerning the reference to factfinders without consent of nonjury cases where the amount in demand is less than $15,000 to be persuasive of the legislative intention with respect to references to attorney referees of any civil nonjury case as provided in General Statutes § 52-434 (a) (4). We have no occasion on this appeal to consider possible claims relating to the validity of nonconsensual references to factfinders pursuant to General Statutes §§ 52-549n through 52-549t or Practice Book §§ 546B through 546K, which pertain to such references.

After the technical revision of Title 52 had been approved on May 11, 1982, which, inter alia, subdivided § 52-434 (a) into its present four subdivisions, the statute continued to retain the requirement of "written consent of the parties or their attorneys" before a case could be referred to any state referee. Public Acts 1982, No. 82-160, § 167 (a). On May 27, 1982, another amendment of § 52-434 (a) was approved modifying the requirement of consent of the parties for references to constitutional state referees, allowing the Superior Court to "refer any civil, nonjury case or, with the written consent of the parties or their attorneys, any civil jury case." Public Acts 1982, No. 82-392, § 2.[10] The consent requirement for references by the Circuit Court and the Juvenile Court to former judges of those courts as state referees was not affected by No. 82-392 of the 1982 Public Acts because it was contained in the separate provisions pertaining to such references which have remained unchanged since their inception and which were designated as subdivisions (2) and (3) by the 1982 technical revision. Public Acts 1982, No. 82-160, § 167 (a). Undoubtedly a similar provision expressly retaining the consent requirement for references to attorney referees would have been preferable, just as more precise draftsmanship would have dictated retention of the limitation expressly confining attorney referees to the function of factfinding. As we have noted previously, the omission of the latter created the problem that the findings of an attorney referee could not be implemented through a judgment unless the legislature had intended that the procedures set forth in the statutes and rules of practice pertaining to committees

---

[10] The amendment to the consent provision by No. 82-392 of the 1982 Public Acts, repeats the text of § 52-434 (a) as it stood prior to the adoption of the technical amendment which divided the statute into four subdivisions. The reason for this discrepancy may have been that No. 82-392 of the 1982 Public Acts took effect from its passage on May 27, 1982, while the technical revision, No. 82-160 of the 1982 Public Acts, did not become effective until October 1, 1982. Public Acts 1982, No. 82-392, § 3; General Statutes § 2-32.

should be applicable to such referees. Similarly, the absence of a consent requirement for attorney referees would create the incongruity that consent of the parties is necessary for references to the experienced former judges of the Circuit and Juvenile Courts but unnecessary for references to attorney referees lacking any judicial experience.

We are convinced that when the consent requirement for references to constitutional state referees was removed by No. 82-392 of the 1982 Public Acts for nonjury civil cases the legislature never intended that this modification should be applicable for references to attorney referees. The only part of § 52-434 (a) that was changed was the portion recently approved for codification as subdivision (1) by the technical revision adopted on May 11, 1982, relating solely to constitutional state referees. This contemplated change in the structure of the statute militates against viewing No. 82-392 of the 1982 Public Acts as removing the necessity of consent for a reference to attorney referees, who are mentioned only in subdivision (4). The consent requirement was expressly retained for Circuit Court and Juvenile Court references in subdivisions (2) and (3) of § 52-434 (a). Consent of the parties is also required for a reference to a committee under § 52-425, except in extraordinary situations not pertinent to this appeal.[11] Our conclusion that the legislature intended that the procedures prescribed by the statutes and rules of practice for references to committees should be followed in respect to the factfinding function of attorney referees also provides a basis for our view that

[11] General Statutes § 52-425; see footnote 5, supra; provides in part: "A committee shall not be appointed without the consent of all parties appearing, unless the court, after a hearing upon the motion for appointment of a committee, is of the opinion that the questions involved are such as clearly ought to be sent to a committee."

This appeal does not present the question of whether the court, after a hearing on a motion for reference, might have found the issues involved "such as clearly ought to be sent to a committee." It is undisputed that no such hearing was held. Accordingly, we have no occasion to consider

consent is necessary for a reference to an attorney referee to the same extent that it is required for a reference to a committee pursuant to § 52-425.[12] The most reasonable explanation of the omission from subdivision (4) of any reference to the consent requirement for references to attorney referees as well as their factfinding function is that the legislature intended that the procedures applicable to committees should be followed as set forth in the statute and rules.

The conclusion we have come to, that consent is required for a reference to an attorney referee removes the essential basis for the defendant's due process challenge to the constitutionality of § 52-434 (a) (4), since it is largely predicated on the assumption that the statute authorizes a party to be ordered "without choice or consent, to appear before an attorney acting as a trial referee." To the extent that the defendant also claims that due process requires a court to be "constitutionally sanctioned and safeguarded" by legislative control over appointments of those who perform a judicial role, our discussion of the claimed violations of article fifth, §§ 2 and 6, of our state constitution in Part IA of this opinion is a sufficient response. Our conclusion was that attorney referees do not perform a judicial role because their function is limited to factfinding. A similar conclusion has been reached in respect to due

what cases the statute authorizes to be referred to a committee without consent of the parties or the possible constitutional ramifications of such references to a committee. See *Hall* v. *Hall*, 3 Conn. 308, 309 (1820); *Slosberg* v. *Callahan Oil Co.*, 5 Conn. Sup. 375, 376 (1937).

[12] We note that Practice Book § 429 makes no provision for consent of the parties for reference to a committee of "any case wherein the parties are not, as a matter of right, entitled to a trial by jury." The rule was not intended to dispense with the statutory requirement of consent for appointment of a committee in General Statutes § 52-425. It may have been intended to indicate the acceptance by the Superior Court as a separate magistracy of the authority to refer cases to committees created by the legislature not only in cases where the parties had consented but also in those cases where "the questions involved are such as clearly ought to be sent to a committee." General Statutes § 52-425; see *State* v. *Clemente*, 166 Conn. 501, 507, 353 A.2d 723 (1974); *Adams* v. *Rubinow*, 157 Conn. 150, 161, 251 A.2d 49 (1968).

process challenges to the use of persons outside the judiciary appointed by the federal courts to find the facts upon which the court's judgment is based. *United States* v. *Raddatz,* supra, 681–84.

## D

Another facet of the defendant's due process challenge involves the circumstance that the reference to the attorney referee was made without giving notice that such an order was contemplated and without obtaining the consent of the parties before the order was entered. This claim no longer implicates the constitutionality of § 52-434 (a) (4), which we have construed to require such consent, but attacks the procedure followed by the court in making the reference, which did not comply with our interpretation of the statute. We have concluded that the legislature intended references to attorney referees to conform to the procedure prescribed for committees in § 52-425, which requires for appointment of a committee "the consent of all parties appearing."[13]

The failure of the court to obtain the consent of the parties before ordering the reference to the attorney referee does not, however, flaw the jurisdiction of the court over the subject matter under the circumstances of this case where the defendant utterly neglected to raise this procedural deficiency or any other irregularity in the trial court. After notification of the reference no attempt was made to revoke it pursuant to Practice Book § 432. Instead, the parties appeared for trial before the designated attorney referee and, without objection, proceeded to a full trial of the case on its merits. Even when the report of the committee was

---

[13] We are not concerned in this appeal with the exception to the consent requirement in General Statutes § 52-425, "unless the court, after a hearing upon the motion for appointment of a committee, is of the opinion that the questions involved are such as clearly ought to be sent to a committee." No such motion for the appointment of an attorney referee was made and no such hearing was held. See footnote 9, supra.

filed, finding the issues adversely to the defendant, no objection to its acceptance pursuant to Practice Book § 440 was raised by the defendant on any ground, let alone the lack of consent to the reference.

"We have made it clear that we will not permit parties to anticipate a favorable decision, reserving a right to impeach it or set it aside if it happens to be against them, for a cause which was well known to them before or during the trial." *Krattenstein* v. *G. Fox & Co.,* 155 Conn. 609, 616, 236 A.2d 466 (1967). "We have repeatedly indicated our disfavor with the failure, whether because of a mistake of law, inattention or design, to object to errors occurring in the course of a trial until it is too late for them to be corrected, and thereafter, if the outcome of the trial proves unsatisfactory, with the assignment of such errors as grounds of appeal." *State* v. *Grimes,* 154 Conn. 314, 323, 228 A.2d 141 (1966). We have held that the failure to raise the issue of a referee's disqualification either before or during the trial "can be construed as the functional equivalent of 'consent in open court' " to the referee's presiding over the trial. *Timm* v. *Timm,* 195 Conn. 202, 205, 487 A.2d 191 (1985). Only in the exceptional circumstance where an accusation of actual prejudice has been made against a judge, striking at "the very core of judicial integrity"; *Felix* v. *Hall-Brooke Sanitarium,* 140 Conn. 496, 501, 101 A.2d 500 (1953); have we departed from these principles by invoking our authority in the interests of justice to review as "plain error," pursuant to Practice Book § 3063, claims not properly preserved in the trial court. *Cameron* v. *Cameron,* 187 Conn. 163, 168, 444 A.2d 915 (1982). We conclude that justice does not require that we consider as "plain error" the failure to obtain the consent of the parties to the reference of this case in view of the implicit consent thereto which must be inferred from the conduct of the parties in submitting the case for determination by the attorney referee without a word of protest until this appeal was filed.

## II

With respect to the various claims of error relating to the merits of the factual findings made by the attorney referee, as well as the judgment rendered by the trial court based thereon, the defendant is precluded from effective appellate review by its failure to file a motion to correct the report of the referee pursuant to Practice Book § 438 or an objection to acceptance thereof pursuant to Practice Book § 440. "The defendants filed no exceptions to the acceptance of the report by the court in accordance with Practice Book [§ 440] and therefore the conclusions must stand." *Jensen's, Inc.* v. *Killingworth,* 152 Conn. 237, 243, 206 A.2d 114 (1964). A litigant cannot wholly ignore established procedures for the protection of its rights, as this defendant has done, and hope to receive on appeal the same treatment accorded to those who follow the rules of practice. We therefore decline to review further the judgment of the trial court.

There is no error.

In this opinion the other judges concurred.