[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM FILED MAY 6, 1997 CT Page 4941
On February 3, 1993, the plaintiff, Brian R. McClain (the plaintiff), filed a six-count complaint against the defendants, Gerald R. Byers and Clement Roy (the defendants). The complaint concerns construction work performed by the defendants on plaintiff's home located at 40 Barn Hill Road, Monroe, Connecticut.
In count one, the plaintiff alleges that the contract he entered into with the defendants is in violation of General Statutes §§ 20-429(a) and 42-135a. In count two, the plaintiff alleges that the defendants do not have a current certificate of registration from the Commissioner of Consumer Protection in violation of General Statutes § 20-420(a) and § 20-427(b)(5).
The Court, Hauser, J. entered summary judgment in favor of the defendants on Counts One and Two. In count three, the plaintiff alleges that the actions of the defendant constitute unfair or deceptive acts or practices in violation of General Statutes § 42-110a, et seq. In count four, the plaintiff alleges that the defendants invalidly repudiated the contract. In count five, the plaintiff alleges that the defendants breached the contract by failing to (a) timely perform their obligations under the contract; (b) perform their obligations in a workmanlike manner; or (c) complete the work promised under the contract. In count six, the plaintiff alleges that the defendants negligently performed their obligations under the contract.
On November 23, 1993, the defendants filed an answer, a special defense and counterclaim. In their special defense, the defendants claim that the plaintiff is not entitled to the protection of the Home Improvement Act, General Statutes §20-419 et seq., on the ground that the plaintiff failed and refused to enter into a written contract with the defendants, electing instead to hire them as employees. In counts one and two of the counterclaim, the defendants claim that the plaintiff promised the defendants that they would receive an hourly wage, but the plaintiff has refused to pay wages for hours worked within the time limitation set forth in General Statutes §31-71c. In counts three and four, the defendants allege that the plaintiffs actions are in violation of the Connecticut Unfair Trade Practices Act (CUTPA). CT Page 4942
A hearing on this matter was held before Attorney Trial Referee, Raymond B. Rubens in June 1995. On March 12, 1996, the ATR issued his decision in which he made findings of fact and conclusions of law. The ATR recommended that judgment enter in favor of the defendants on the plaintiffs complaint and against the plaintiff on counts one and two of defendants' counterclaim.
On March 25, 1996, the plaintiff filed a motion to correct the ATR's report, in which he requested that the ATR make additional findings of fact and also strike several of his findings. See Practice Book § 438. On April 2, 1996, the ATR denied the motion to correct.
On April 8, 1996, the plaintiff filed exceptions to the ATR's report. See Practice Book § 439. Defendants have objected to these exceptions.
DISCUSSION
"[A]n attorney referee is simply a fact finder whose determination of the facts is reviewable in accordance with well-established procedures prior to the rendition of judgment by the court." Seal Audio, Inc. v. Bozak, Inc., 199 Conn. 496, 502,508 A.2d 415 (1986). An attorney referee "[has] no power to render a judgment[.]" Id., 502. Nevertheless, attorney trial referees are permitted "to express their view on questions of law. Practice Book § 434; Practice Book § 546g; Seal Audio, Inc. v.Bozak, Inc., supra, 509-10." Rostenberg-Doern Co. v. Weiner,17 Conn. App. 294, 299, 552 A.2d 827 (1989).
The Supreme Court in Cohn v. Hartford, 130 Conn. 699, 706-07,37 A.2d 237 (1944), defined "ultimate facts" as "those ultimate conclusions of fact which will enter immediately into and be determining elements in the judgment of the court. Conn. App. Proc., § 80. The determination of these facts often requires the application to the subordinate facts of principles of law, but the conclusion reached may be none the less a finding of an ultimate fact. Davis v. Margolis, 107 Conn. 417, 420,140 A. 823; Gowdy v. Gowdy, 120 Conn. 508, 510, 181 A. 462. Such findings of ultimate facts by a referee or committee are not necessarily conclusive but are reviewable, upon remonstrance to the report, to determine whether they are reasonable and proper in view of subordinate facts found and the applicable principles of law. Practice Book § 172; Skarzyrlski v. Liquor ControlCT Page 4943Commission, 122 Conn. 521, 526, 191 A. 98; Meserole v. Liquor Control Commission, 125 Conn. 104, 106, 3 A.2d 664." A party who fails to file a motion to correct waives "any right to attack the subordinate factual findings contained in the report. SealAudio, Inc. v. Bozak, Inc., [supra, 199 Conn. 518.]" LiVolsi v.Pylypchuk, 12 Conn. App. 527, 528, 532 A.2d 593 (1987). As to subordinate facts, "[c]orrections will not be made in the report unless a material fact has been found without evidence, or there has been a failure to find an admitted or undisputed fact, or a fact has been found in such doubtful language that its real meaning does not appear. Practice Book § 173 [now 439]."Garofalo v. Argaves, 147 Conn. 685, 687-88, 166 A.2d 158 (1960).
The following discussion summarizes the facts found by the ATR. The ATR rejected all findings of fact sought by the plaintiff in his motion to correct, however, the court, as indicated below, finds certain of the facts proposed by the plaintiff to be undisputed or admitted by the defendants and therefore the court has supplemented some of the ATR's findings. See Practice Book § 439 (the Court is authorized to correct the report of an ATR for failing to find an admitted or undisputed fact).[1]
In 1991, the plaintiff contacted the defendant Byers regarding the renovation of plaintiff's home at 40 Barn Hill Road, Monroe, Connecticut. At the parties' initial and subsequent meetings, the defendant Byers stated to the plaintiff that Byers had been given the builder of the year award for building a house in Newtown, Connecticut. (Plaintiffs Proposed Finding ["PF"] #3).
Prior to work commencing on the plaintiffs home, the plaintiff, at least on two occasions, reviewed work done by the defendants for other customers, and the plaintiff commented that the work was well performed. (PF #5.) Plaintiff prepared the sketches and plan to renovate the property and retained a mechanical engineer to prepare the final plans. The plaintiff submitted the application for the building permit which listed him as the general contractor.
On October 10, 1991, the defendants submitted to the plaintiff a "Contract for remodeling." In the "Contract for remodeling," the defendants proposed that they be paid at the rate of $27.00 per hour with a cap of $46,000.00 for the work proposed by the plaintiff. (PF #6.) This proposal was signed by the defendants, but neither this document, nor any of the CT Page 4944 numerous written revisions to it, were ever signed by the plaintiff. Work on the renovations began in May 1992 and the defendants were paid at a rate of $25.01 per hour. The defendants submitted to the plaintiff weekly time sheets and the plaintiff would pay the defendants the day after the time sheets were received. Work on the plaintiffs premises was halted because of the winter and the delay in the plaintiffs obtaining of his funding through refinancing of his home, but was resumed in the spring of 1992. (PF #11.) During the summer of 1992 the defendants worked on the plaintiffs project, meeting almost every morning to review work to be performed with the plaintiff. (PF #20.)
The defendants were experienced carpenters and performed the demolition of part of the plaintiff's house and its rebuilding with no training from the plaintiff. (PF #26.) The plaintiff paid for the rental of a floor sander at a cost of $202.99. (PF #48.) In September 1992, the defendants stopped work because plaintiff claimed that the $46,000 cap had been reached.
 I
In Count three, the plaintiff alleges that the defendants violated CUTPA because they performed home improvements under an agreement that violated the Home Improvement Act. The ATR found that the parties' entire agreement was neither reduced to writing, nor signed by the plaintiff as required by the Home Improvement Act and none of the written proposals complied with all the requirements of the Home Improvement Act, including the requirement that the written agreement contain a notice of cancellation rights. See C.G.S. § 20-429.
As the Supreme Court has explained, the Home Improvement Act "was passed for the protection of the public . . ." (Internal quotation marks omitted.) Rizzo Pool Co. v. Del Grosso,232 Conn. 666, 678, 657 A.2d 1087 (1995). "The objective . . . is to promote understanding by the consumer, to ensure his ability to make an informed decision and to protect him from substantial work by an unscrupulous contractor. 22 S. Proc., Pt. 17, 1979 Sess., p. 5797, remarks of Senator Audrey P. Beck." (Internal quotation marks omitted.) Id. "As remedial legislation, the HIA must be .afforded a liberal construction in favor of those whom the legislature intended to benefit." Id., citing BarrettBuilders v. Miller, 215 Conn. 316, 323, 576 A.2d 445 (1990). CT Page 4945
"The legislative history of the Act reveals it was intended to protect home owners from irresponsible or fly-by-night contractors. [O'Donnell v. Rindfleisch, 13 Conn. App. 194, 202-03,535 A.2d 824 (1988)]." Zaleski v. Dudek, Superior Court Judicial District of Hartford-New Britain at Hartford, Docket No. 375364, 14 CONN. L. RPTR. 583 (August 9, 1995) (Berger, J.). aff'd,41 Conn. App. 909, 675 A.2d 12 (1986).
"A contract is subject to the requirements of the Home Improvement Act if it constitutes an agreement between a contractor and an owner for the performance of a home improvement." (Internal quotation marks omitted.) Rizzo Pool Co.v. Del Grosso, supra, 232 Conn. 676. General Statutes §20-419 (3), in pertinent part, defines a contractor as "any person who owns and operates a home improvement business or whoundertakes, offers to undertake or agrees to perform any homeimprovement." (Emphasis added.) "`Home improvement contract' means an agreement between a contractor and an owner for the performance of a home improvement." General Statutes §20-419(5).
The plaintiff argues that the defendants are "contractors" performing home improvements within the meaning of § 20-419
of the Home Improvement Act and this argument has weight. See C.G.S § 20-419 (3) (defining contractor as including any person "who undertakes, offers to undertake or agrees to perform any home improvement.") However, "[i]t is a familiar rule, that a thing may be within the letter of the statute and yet not within the statute, because not within its spirit, nor within the intention of its makers." (Internal quotation marks omitted.) KMart v. Cartier, Inc., 486 U.S. 281, 300, 100 L.Ed.2d 313,108 S.Ct. 1811 (1988). The court agrees with the defendants that on the basis of the ATR's subordinate facts, which are accepted by the court as being reasonably supported by the record, the defendants were not contractors within the meaning and intent of the Home Improvement Act. The plaintiff here was not a mere consumer relying on the representations of contractors who would independently perform the work. The plaintiff was the prime contractor, and as found by the ATE, the defendants worked at plaintiff's direction and under his primary supervision and control. This is not to say that contractors may avoid the provisions of the Home Improvement Act by labelling themselves as "employees." However, when a homeowner acts as a prime contractor and truly retains workers as his agents to perform work on his own home, he cannot avoid paying these workers for that work CT Page 4946 under the Home Improvement Act, any more than he could avoid paying them for working on someone else's home at his direction.
Furthermore, assuming arguendo that there was a violation of the Home Improvement Act, and thus a per se violation of CUTPA (See C.G.S. § 20-427), the Court further concludes that plaintiff would not be entitled to monetary relief under CUTPA because plaintiff has failed to allege or prove that he suffered any "ascertainable losses" or "actual damages" proximately caused by defendants' failure to comply with the Act. See C.G.S. § 41-110g (a person may recover "actual damages" for suffering any "ascertainable loss of money or property" as a result of a CUTPA violation).
"It is axiomatic that the burden of proving damages is on the party claiming them." Expressway Associates II v. Friendly IceCream Corp., 218 Conn. 474, 476, 590 A.2d 431 (1991). "When damages are claimed they are an essential element of the plaintiffs proof and must be proved with reasonable certainty."Id., 476-77. "Damages are recoverable only to the extent that the evidence affords a sufficient basis for estimating their amount in money with reasonable certainty." (Internal quotation marks omitted.) Id., 477. The plaintiff failed to prove with reasonable certainty that he suffered any damages as the result of the defendants' actions; and according to the ATR, the plaintiff did not compensate the defendants completely for the work they provided. Therefore, the plaintiff would not be entitled to any damages on his CUTPA claim.
 II
In count four, the plaintiff alleges that the defendants invalidly repudiated the contract, which established a cap of $46,000 for the defendants to finish all home improvements found in the contract. The ATR found that the plaintiff and defendants did not enter into either an express or implied contract establishing a cap of $46,000. The plaintiff refused to sign any of the written contracts. The evidence further shows that the plaintiff made several revisions to the original proposal put forth by the defendants on October 10, 1991, which contained a cap of $46,000 for the defendants to complete the remodeling of the plaintiffs home. The defendants repeatedly testified that they did not believe that there was a contract establishing a cap of $46,000 because the plaintiff refused to sign any contract nor did they explicitly agree to the terms set out in any of the CT Page 4947 revisions of their original proposal. The last revision of the contract shows that the defendants believed that they were owed $3650.00 for the extra work that they had performed, and asked for another $8,000 to finish the work remaining. (Exhibit Z.) On the other hand, the plaintiff testified that he accepted the contract proposed by the defendants on October 10, 1991, even though, subsequently, he made several revisions to that contract. Such evidence supports the ATR's finding that there was no meeting of the minds between the parties as to the cap or the home improvements needed to be done within that cap to support a breach of contract claim. Since there is evidence in the record to support the ATR's finding that no express or implied contract existed between the parties establishing a cap of $46,000, the court concludes that the ATR's finding was not clearly erroneous. See Connecticut v. Hartford, supra 130 Conn. 707.
"A reviewing authority may not substitute its finding for those of the trier of facts. This principle applies no matter whether the reviewing authority is the Supreme Court . . . the Appellate Court . . . or the Superior Court reviewing the findings of . . . attorney trial referees." (Internal quotation marks omitted.) Elgar v. Eglar, 238 Conn. 839, 848, 679 A.2d 937
(1996). "The factual findings of a trial referee on any issue are reversible only if they are clearly erroneous . . . A reviewing court cannot retry the facts or pass upon the credibility of the witnesses." (Brackets omitted; internal quotation marks omitted.)Id., 849. "A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) Id.
Therefore, that the plaintiff's claim of invalid repudiation of the contract is rejected.
 III
In count five, the plaintiff alleges that the defendants breached their contract with the plaintiff by failing to perform their obligation in a workmanlike manner, or by failing to complete the work contemplated under the contract.
The plaintiffs claim that the defendants failed to complete their work contemplated under the contract is based on plaintiffs CT Page 4948 claim that a written contract existed. As previously discussed, the ATR found that no written contract existed between the parties and that finding is reasonably supported by the record. As to the plaintiffs claim that the defendants failed to complete their work in a workmanlike manner, the only evidence presented by the plaintiff on that issue concerned the improperly finished floors. The ATR, however, rejected the plaintiffs claim that the defendants did not perform their work in a workmanlike fashion. The ATR heard conflicting testimony as to who was ultimately responsible for the improperly finished floors and whether the plaintiff was entitled to any damages. Based on the conflicting testimony presented at the hearing, the factual determination of the ATR was not clearly erroneous. See Jacques All Trade Corp. v.Brown, 42 Conn. App. 124, 129, 679 A.2d 27, cert. granted on other grounds, 239 Conn. 914, 682 A.2d 1001 (1996).
 IV
In count six, the plaintiff alleges that the defendants negligently performed their obligation under the contract. The ATR, however, determined that the defendants did not negligently perform their work.
It is important to note that most of the allegations of negligence asserted against the defendants are based on the failure of the defendants to complete their work under the contract. These allegations do not support a negligence claim, but would have been relevant to the issue of damages if plaintiff had prevailed on his contract claim that defendants were required to finish the remodeling of the plaintiff's house within the $46,000 cap.
The only allegation of negligence on which the plaintiff presented any evidence concerned the sanding and sealing of floors. Both sides offered conflicting evidence as to who was ultimately responsible for the improperly finished floors. Based on the evidence, the ATR could have reasonably found that the plaintiff purchased the sealer and the finish. The ATR could also have found that the problems with the floor were the result of the plaintiff using a wet mop to clean the floor after the defendants had applied the sealant and finish. Since there is evidence in the record to support the ATR's finding that the defendants were not negligent in sealing and finishing the floor, the ATR's finding is not clearly erroneous, and therefore, will not be disturbed. CT Page 4949
Counterclaim
 I
In counts one and two of their counterclaim, the defendants allege that the plaintiff failed to pay wages for all the hours worked. During the hearing, the plaintiff acknowledged that the defendants are due the sum of $655.00 for work not contemplated in the original proposal. (ATR's Report ¶ 39.) The ATR found that the defendants are also entitled to $462.50 each, for hours worked on September 29 and 30, 1992. These conclusions are supported by the record and will not be disturbed by the court.
 II
In counts three and four of their counterclaim, the defendants allege that the conduct of the plaintiff violated the Connecticut Unfair Trade Practices Act. The ATR recommended that the court find in favor of the plaintiff and against the defendants on these counterclaims alleging CUTPA violations. The defendants have not filed exceptions or objections to this recommendation. This recommendation is reasonably supported by the record and will be accepted by the Court.
CONCLUSIONS
Therefore, the plaintiffs exceptions to the ATR's report are denied as discussed above. Judgment shall enter against the plaintiff and in favor of the defendants on Counts three, four, five and six of the complaint. Judgment shall enter against the plaintiff and in favor of the defendants on counts one and two of the counterclaim. On their counterclaim, the defendants are awarded $790.00 each for a total award of $1,580.00.
STEVENS, J.