ROSTENBERG-DOERN COMPANY, INC.
*v.* ALAN G. WEINER ET AL.
(6082)

DUPONT, C. J., SPALLONE and FOTI, Js.

Argued October 4, 1988—decision released January 10, 1989

*Edward J. Gallagher,* for the appellant (plaintiff).

*Jack D. Garamella,* for the appellees (defendants).

FOTI, J. The plaintiff, Rostenberg-Doern Company, Inc., initiated this action to recover a real estate commission in connection with the rental of commercial property owned by the defendants, Alan and Keith Weiner. After the pleadings were closed, the case was referred to an attorney trial referee pursuant to General Statutes § 52-434 (a) (4).[1] Following a hearing, the trial referee issued a report that included his recommendation that judgment be rendered in favor of the plaintiff. The trial court accepted the trial referee's findings of fact, but rejected his conclusions of law and rendered judgment for the defendants. The plaintiff appeals from the judgment and claims that the trial court erred (1) in rendering its decision in accordance

---

[1] General Statutes § 52-434 (a) (4) provides: "In addition to the state referees who are appointed pursuant to subdivision (1), (2) or (3) of this section, the chief justice may appoint, from qualified members of the bar of the state, as many state referees as he may from time to time deem advisable or necessary."

with Practice Book § 546J, rather than Practice Book § 443, (2) in accepting a particular fact found by the trial referee, and (3) in rejecting the trial referee's legal conclusions. We find no error.

The following facts were found by the attorney trial referee and accepted by the court. The plaintiff is a licensed real estate brokerage company. The defendants, Alan and Keith Weiner, are business partners, and Keith Weiner owned a parcel of commercial real estate in Brookfield. The plaintiff, through its agent, Jerome Kovacs, approached the defendants to lease this property for a client. On or about November 18, 1983, Alan Weiner signed a real estate listing agreement prepared by the plaintiff, which left blank the designated space for entry of the dollar amount of the plaintiff's commission. The contract was then forwarded to the plaintiff who signed it and filled in some of the missing information, including its address and commission rate which was stated as "five dollars per square foot with escalation." A photocopy of the agreement, containing the additions and an attached rate schedule, was returned to the defendants. Among the attachments were provisions for the payment of interest on overdue accounts and attorney fees for the collection of a commission. After two months of negotiations between the defendants and the plaintiff's client, the parties executed a lease agreement. Kovacs was an active participant in those negotiations, and the lease named the plaintiff as broker for the property. In February, the plaintiff sent the defendants a bill for its commission in the amount of $27,400. The defendants refused to pay that amount, and the plaintiff brought this action to recover its commission.

The plaintiff's first claim is that the trial court erroneously referred to Practice Book § 546J[2] as the author-

[2] "[Practice Book] Sec. 546J. ——ACTION BY COURT

"After review of the finding of facts and hearing on any objections thereto, the court may take the following action: (1) render judgment in accordance

ity for its decision and, as a result, treated the attorney trial referee as a "fact-finder."[3] While we agree that the trial court's reference to Practice Book § 546J was improper, we conclude that it nevertheless acted properly.

It is undisputed that the attorney trial referee in this case was appointed pursuant to General Statutes § 52-434 (a) (4)[4] and not General Statutes § 52-549n.[5]

with the finding of facts; (2) reject the finding of facts and remand the case to the fact-finder who originally heard the matter for a rehearing on all or part of the finding of facts; (3) reject the finding of facts and remand the matter to another fact-finder for rehearing; (4) reject the finding of facts and revoke the reference; (5) remand the case to the fact-finder who originally heard the matter for a finding on an issue raised in an objection which was not addressed in the original finding of facts; or (6) take any other action the court may deem appropriate.

"The court may correct a finding of facts at any time before accepting it, upon the written stipulation of the parties.

"The fact-finder shall not be called as a witness, nor shall the decision of the fact-finder be admitted into evidence at another proceeding ordered by the court."

[3] The objectionable portion of the trial court's decision is as follows: "Accordingly, the court sustains the defendants' objections to acceptance of the Fact-finder's report. In accordance with Connecticut Practice Book, Sec. 546J, the court accepts the facts as found but rejects the conclusions and enters judgment for the defendants."

[4] See footnote 1, supra.

[5] "[General Statutes] Sec. 52-549n. CERTAIN CONTRACT ACTIONS REFERRED TO FACT-FINDERS. RULES OF PROCEDURE. In accordance with the provisions of section 51-14, the judges of the superior court may make such rules as they deem necessary to provide a procedure in accordance with which the court, in its discretion, may refer to a fact-finder for proceedings authorized pursuant to this chapter, any contract action pending in the superior court in which only money damages are claimed and which is based upon an express or implied promise to pay a definite sum, and in which the amount, legal interest or property in demand is less than fifteen thousand dollars exclusive of interest and costs. Such cases may be referred to a fact-finder only after the pleadings have been closed, a trial list claim has been filed, no claim for a jury trial has been filed at the time of reference, and the time prescribed in section 52-215 for filing a jury trial claim within thirty days of the return day or within ten days after the issue of fact has been joined has expired."

These two statutes authorize the appointment of qualified members of the bar to sit as adjuncts to the trial bench in nonjury cases for the purpose of accelerating the disposition of cases. While attorney referees appointed pursuant to General Statutes § 52-434a (4) are authorized to hear a broader assortment of disputes involving greater monetary value, those appointed pursuant to General Statutes § 52-549n are referred to as "fact-finders" and possess less authority.[6] General Statutes § 52-549n; Practice Book § 546D. Proceedings before attorney trial referees appointed in accordance with General Statutes § 52-434 (a) (4) are governed by the procedures set forth in Practice Book § 434 through § 444. *Ruhl* v. *Fairfield,* 5 Conn. App. 104, 105, 496 A.2d 994 (1985). "In like manner, Practice Book §§ 546B–546K control the referral of cases to the newly created factfinders under General Statutes § 52-549n . . . ." *E. I. Constructors, Inc.* v. *Scinto,* 12 Conn. App. 348, 352, 527 A.2d 1195 (1987). Therefore, the plaintiff is correct that because the attorney trial referee in this case was appointed pursuant to General Statutes § 52-434 (a) (4), the trial court should have cited Practice Book § 443[7] as the authority for its decision.

---

[6] Factfinders are limited to hearing contract actions "based upon an express or implied promise" in which only "money damages . . . less than fifteen thousand dollars" are claimed. General Statutes § 52-549n; Practice Book § 546D.

[7] "[Practice Book] § 443. FUNCTION OF THE COURT

"The court shall render such judgment as the law requires upon the facts in the report as it may be corrected. If the court finds that the committee has materially erred in his rulings or that by reason of material corrections in his findings the basis of the report is subverted or that there are other sufficient reasons why the report should not be accepted, the court shall reject the report and refer the matter to the same or another committee for a new trial or revoke the reference and leave the case to be disposed of in court.

"The court may correct a report at any time before judgment upon the written stipulation of the parties or it may upon its own motion add a fact which is admitted or undisputed or strike out a fact improperly found."

The plaintiff argues that Practice Book § 443 provides no authority for the action taken by the trial court in this case. Instead, it claims that Practice Book § 443 required the trial court to remand the matter to the same or a different trial referee when it determined that the attorney referee made a "material error." The question for us to decide, therefore, is whether the trial court had the authority, pursuant to Practice Book § 443, to reject the attorney trial referee's legal conclusions and render judgment for the defendant contrary to the trial referee's recommendation. We conclude that the trial court was authorized to do so.

While the two referral programs differ in name, source of appointment and scope of authority, under both programs the referees "share the same function of factfinders 'whose determination of the facts is reviewable in accordance with well established procedures prior to the rendition of judgment by the court.' " *E. I. Constructors, Inc.* v. *Scinto,* supra, quoting *Seal Audio, Inc.* v. *Bozak, Inc.,* 199 Conn. 496, 502, 508 A.2d 415 (1986). Under either program, there is no authority to render judgments. *Health Planning Associates, Inc.* v. *Whitlock,* 12 Conn. App. 190, 193, 529 A.2d 1352 (1987). Thus, "having no power to render a judgment, an attorney referee is *simply a factfinder* . . . ." (Emphasis added.) *Seal Audio, Inc.* v. *Bozak, Inc.,* supra, 502.

Our rules of practice outline the functions and duties of attorney referees and factfinders and place an affirmative obligation on them to report to the court the "facts found and the conclusions drawn therefrom." Practice Book § 434; see also Practice Book § 456g. Although the rules make no reference to any additional duties, they *permit* attorney referees to express their views on questions of law. Practice Book § 434; Practice Book § 546g; *Seal Audio, Inc.* v. *Bozak, Inc.,* supra, 509–10. Our Supreme Court has concluded that "[t]he

fact that the attorney referee went beyond the bare statutory requirement of reporting the facts found by including his opinion upon the legal issues involved in the case did not transform his role into a judicial one. The views of a committee upon the law carry no more force than those of the parties in their arguments at the hearing before the court that is to enter judgment. See *Lyon* v. *Wilcox,* 98 Conn. 393, 396, 119 A. 361 (1923); *Stehlin-Miller-Henes Co.* v. *Bridgeport,* 97 Conn. 657, 665, 117 A. 811 (1922)." *Seal Audio, Inc.* v. *Bozak, Inc.,* supra, 510.[8] Practice Book § 443 specifically provides that "[t]he court shall render such judgment as the law requires upon the facts in the report as it may be corrected." "The reviewing court is the effective arbiter of the law and the legal opinions of a committee, like those of the parties, though they may be helpful, carry no weight not justified by their soundness as viewed by the court that renders judgment." *Seal Audio, Inc.* v. *Bozak, Inc.,* supra; see also *Rowan Construction Corporation* v. *Hassane,* 17 Conn. App. 71, 549 A.2d 1085 (1988).

Our case law is clear that under either referral program the attorney referee is simply a factfinder whose legal conclusions are merely advisory, and the trial court therefore has the inherent authority to reject legal recommendations. We conclude that the language in Practice Book § 443 that requires the trial court to remand a case to the original referee or a different one where it finds the referee "materially erred in its rulings," refers to the attorney referee's findings of fact and *not* to his or her conclusions of law. Therefore, since attorney trial referees appointed under General Statutes § 52-434 (a) (4) are factfinders whose conclusions of law are not binding on the trial court, it was not error

---

[8] In *Seal Audio, Inc.* v. *Bozak, Inc.,* 199 Conn. 496, 508 A.2d 415 (1986), the court found that the rules governing procedures in matters referred to committees are also applicable to attorney trial referees.

for the trial court to reject the trial referee's conclusions of law. Although the trial court referred to the incorrect rule of practice in rendering its decision, we will not reverse that decision because we find the trial court reached the correct result. *Favorite* v. *Miller*, 176 Conn. 310, 317, 407 A.2d 974 (1978).

The plaintiff's second claim of error asserts that the trial court erred in refusing to consider its objection to a particular fact as found by the attorney trial referee.[9] The plaintiff did not file a motion to correct the findings of the attorney trial referee[10] or object to the trial court's acceptance of the report[11] as required by our rules of practice. Instead of filing its own objection, the plaintiff now relies upon its memorandum in

[9] The trial referee's finding of fact objected to by the plaintiff is as follows: "On or about November 18, 1983, at the request of Jerome Kovacs, Mr. Alan Weiner signed a real estate listing agreement with Rostenberg-Doern which is shown as Plaintiff's Exhibit A. Said agreement left the space for price blank, and had no attachments."

[10] "[Practice Book] Sec. 438. MOTION TO CORRECT

"If either party desires to have the report or the finding corrected by striking out any of the facts found, or by adding further facts, or by stating the claims of the parties made before the committee, or by setting forth rulings upon evidence or other rulings of the committee, he shall within two weeks after the filing of the report or finding file with the court a motion to correct setting forth the changes and additions desired by him. He shall accompany the motion with a brief statement of the grounds of each correction asked, with suitable references to the testimony. The file shall then be returned to the committee for consideration of the motion to correct. As soon as practicable the committee shall file with the court the motion to correct, together with his decision thereon."

[11] "[Practice Book] Sec. 440. OBJECTIONS TO ACCEPTANCE OF REPORT

"A party may file objections to the acceptance of a report on the ground that conclusions of facts stated in it were not properly reached on the basis of the subordinate facts found, or that the committee erred in rulings on evidence or other rulings or that there are other reasons why the report should not be accepted.

"If an objection raises an issue of fact the determination of which may require the consideration of matters not appearing in the report or stenographic notes of proceedings before the committee, the adverse party shall, within two weeks after the filing of the objection, plead to it by a motion to strike, answer or other proper pleading."

opposition to the defendants' objections to the attorney trial referee's report in which it merely stated its disagreement with the trial referee's finding.

The plaintiff's notation in its memorandum opposing the defendants' objections is not a substitute for filing a proper motion in accordance with our rules of procedure. Since the plaintiff has failed to follow the appropriate procedural guidelines as required by the rules, we are precluded from reviewing its claim. *Dorsen* v. *Kay,* 13 Conn. App. 645, 650, 538 A.2d 1080, cert. denied, 208 Conn. 805, 545 A.2d 1102 (1988); *LiVolsi* v. *Pylypchuk,* 12 Conn. App. 527, 528, 532 A.2d 593 (1987). " 'A litigant cannot wholly ignore established procedures for the protection of [its] rights, as [the plaintiff] has done, and hope to receive on appeal the same treatment accorded to those who follow the rules of practice.' " *Dorsen* v. *Kay,* supra, 650, quoting *Seal Audio, Inc.* v. *Bozak, Inc.,* supra, 518. We therefore decline to review this claim.

The plaintiff's final claim of error is that the trial court erred in rejecting the attorney trial referee's recommendations and finding that the listing agreement signed by the defendants did not comply with the requirements of General Statutes § 20-325a (b),[12] and

[12] "[General Statutes] Sec. 20-325a. ACTIONS TO RECOVER COMMISSION ARISING OUT OF REAL ESTATE TRANSACTIONS. . . .

"(b) No person, licensed under the provisions of this chapter, shall commence or bring any action in respect of any acts done or services rendered after October 1, 1971, as set forth in subsection (a), unless such acts or services were rendered pursuant to a contract or authorization from the person for whom such acts were done or services rendered. To satisfy the requirements of this subsection any such contract or authorization shall (1) be in writing, (2) contain the names and addresses of all the parties thereto, (3) show the date on which such contract was entered into or such authorization given, (4) contain the conditions of such contract or authorization and (5) be signed by the owner or an agent authorized to act on behalf of the owner only by a written document executed in the manner provided for conveyances in section 47-5, and by the real estate broker or his authorized agent."

was, therefore, invalid. The attorney trial referee found, and the trial court agreed, that the listing agreement signed by the defendants did not include the amount of the plaintiff's commission or any attachments with respect to the plaintiff's rate schedule. On December 1, 1983, the plaintiff sent the defendant a photocopy of the agreement. This copy contained a number of additions which were inserted by the plaintiff including, the plaintiff's signature, the amount of its commission and an attached rate schedule. In addition to these factual findings, the attorney trial referee made a number of legal conclusions and recommended that judgment be rendered in favor of the plaintiff. In rejecting the trial referee's legal conclusions, the trial court found that the attorney trial referee erred as a matter of law in concluding (1) that the plaintiff "reformed" the agreement when it attached the commission schedule and sent it to the defendant on December 1, 1983, and (2) that the defendants were "estopped" from denying responsibility under the altered instrument by accepting the plaintiff's services. The trial court concluded that the plaintiff's failure to comply with the requirements of General Statutes § 20-235a (b), by omitting the amount of its commission from the contract when it was signed by the defendants, rendered the contract unenforceable.

The plaintiff claims that the trial court's conclusion that no legal contract was created is erroneous for two reasons.[13] First, the plaintiff argues that the trial court

---

[13] In its brief, the plaintiff states that it "is not fully in accord with the fact-finder's conclusion that it reformed the agreement when it attached the Commission schedule" and that it does not rely on the theory of estoppel. In light of these concessions we consider these arguments waived. We note, however, that this court decisively held in *Currie* v. *Marano*, 13 Conn. App. 527, 530–31, 537 A.2d 1036, cert. denied, 207 Conn. 809, 541 A.2d 1238 (1988), that the theory of equitable estoppel does not apply to actions brought pursuant to General Statutes § 20-325a. Furthermore, we agree with the trial court's well reasoned opinion that reformation is an equita-

erred in accepting the trial referee's factual finding that the listing agreement signed by the defendants on November 18, 1983, did not contain any attachments with respect to the plaintiff's commission. As we concluded above, the plaintiff's claim for review of this factual determination is precluded because the plaintiff failed to file the proper objections to the factfinder's report as required by Practice Book §§ 438 and 440.[14] This factual conclusion, therefore, must stand. *Suppa Bros., Inc.* v. *Structures, Inc.,* 12 Conn. App. 675, 677, 533 A.2d 901 (1987); *Seal Audio, Inc.* v. *Bozak, Inc.,* supra; see also *Midland Ins. Co.* v. *Universal Technology, Inc.,* 199 Conn. 518, 521–22, 508 A.2d 427 (1986).

The plaintiff's second argument is that, even if there were no attachments to the agreement when it was signed by the defendants, the original document and the December 1, 1983 photocopy of that document with the insertion of the plaintiff's commission rate and attached rate schedule, read together, created a valid contract pursuant to General Statutes § 20-325a (b).

" 'On appeal, it is the function of this court to determine whether the decision of the trial court is clearly erroneous. [Practice Book § 4061]. [W]here the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision . . . .' *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 221–22, 435 A.2d 24 (1980); *Cookson* v. *Cookson,* 201 Conn. 229,

---

ble remedy *"granted by a court* to reform a written agreement to mirror the parties' intentions. J. Calamari & J. Perillo, Contracts (2d Ed.) §§ 9-31-36, pp. 311–316. As such, one of the parties cannot reform it; the changes made by the plaintiff constitute an alteration of the contract." (Emphasis in original.)

[14] See footnotes 8 and 9 supra.

242–43, 514 A.2d 323 (1986).'' *Bowman* v. *1477 Central Avenue Apartments, Inc.,* 203 Conn. 246, 242–43, 524 A.2d 610 (1987).

Our Supreme Court has found that listing contracts are governed exclusively by General Statutes § 20-325a. *William Pitt, Inc.* v. *Taylor,* 186 Conn. 82, 84, 438 A.2d 1206 (1982). That statute provides that a licensed real estate broker may bring an action to recover a commission, only if he enters into a contract that complies with the requirements enumerated in the statute. *Thornton Real Estate, Inc.* v. *Lobdell,* 184 Conn. 228, 230, 439 A.2d 946 (1981); *Howland* v. *Schweir,* 7 Conn. App. 709, 713, 510 A.2d 215 (1986). To comply with the requirements of that section, the contract must include a number of essential terms including "the conditions of such contract." General Statutes § 20-325a (b) (4). The rate of a broker's commission is an essential term of a broker's contract that must be included in the contract. See *Jay Realty, Inc.* v. *Ahearn Development Corporation,* 189 Conn. 52, 453 A.2d 771 (1983).

"This statute has been viewed by our courts as being mandatory and subject to strict construction. See, e.g., *Thornton Real Estate, Inc.* v. *Lobdell,* supra (signature by owner's agent not in compliance with statute as then worded); *Hossan* v. *Hudiakoff,* 178 Conn. 381, 383, 423 A.2d 108 (1979) (lack of address of broker [fatal to claim]); *Arruda Realty, Inc.* v. *Doyon,* 35 Conn. Sup. 617, 620, 401 A.2d 625 (1978) (lack of address of owner [fatal to claim]). 'A broker who does not follow the mandate of the statute does so at his peril.' *Thornton Real Estate, Inc.* v. *Lobdell,* supra, 230–31." *Howland* v. *Schweir,* supra, 714.

The plaintiff is correct that "separate documents will be deemed to constitute a valid contract under § 20-325a (b) if they collectively satisfy the statutory

requirements *and relate to the same agreement. [Good* v. *Paine Furniture Co.,* 35 Conn. Sup. 24, 27, 391 A.2d 741 (1978)]. It is not within the power of courts to create new and different agreements. (Emphasis in original.) *Collins* v. *Sears Roebuck & Co.,* 164 Conn. 369, 375, 321 A.2d 444 (1973)." *Jay Realty, Inc.* v. *Ahearn Development Corporation,* supra, 55.

There is no merit to the plaintiff's claim that the combination of the original November contract, signed by the defendant, which made no reference to the plaintiff's commission, and the subsequent photocopy of that document in which plaintiff filled in its commission and attached a rate schedule, was sufficient to satisfy the strict requirements of General Statutes § 20-325a (b). In this case, neither document "points unquestionably to the other document so as to create a consistent contract." *Jay Realty, Inc.* v. *Ahern Development Corporation,* supra, 56. The original contract does not refer to a subsequent document. Nor does the December 1 letter with its attachments refer unequivocally to the original contract. Furthermore, this statute requires not only that the contract contain all the essential terms of the agreement but also specifically requires that the document "be signed by the owner . . . ." General Statutes § 20-325a (b) (5). Although the defendant signed the original document, he did not sign the later document in which the plaintiff inserted the price of its commission. We agree with the trial court that "[t]he plaintiff's subsequent efforts to create a valid contract by attaching the rate schedule cannot legally alter the terms of the contract *after* it was signed by the defendant." We will not attribute to the owner a commission price inserted at a later time by the broker, especially under the circumstances of this case, in which the amount of the commission was the disputed issue at trial.

.

We therefore conclude that the trial court did not err in finding that the listing agreement was not a valid contract in accordance with General Statutes § 20-325a (b).

There is no error.

In this opinion the other judges concurred.