[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
[MEMORANDUM OF DECISION RE: MOTION FOR ACCEPTANCEOF REFEREE'S REPORT]
The plaintiff, Carsan Realty, Inc., filed a single count complaint dated December 9, 1991, against the defendant, John Rose, alleging a breach of a real estate listing agreement. The plaintiff alleged that the defendant owed it the remaining one-half of its commission in the amount of $9,735.
The defendant filed an amended answer, seven special defenses and a three-count counterclaim on March 26, 1993. The defendant alleged in his special defenses that: the plaintiff was paid in full; the listing contract was unenforceable pursuant to General Statutes § 20-325a(b) because it was unwritten and does not follow the guidelines of the statute; a condition precedent to the contract was not satisfied; the plaintiff breached his fiduciary duties; the statute of frauds and applicable statute of limitations barred the plaintiff's claim; and the plaintiff failed to find a ready, willing and able buyer who could close during the term of the agreement.
On November 18, 1993, a trial was held before a trial referee. On December 13, 1993, a report of findings of the trial referee was filed.
Synopsis of the Referee's Report of Findings
The plaintiff is a licensed real estate agency and the defendant was the owner of an unimproved tract of land in Bozrah, Connecticut. On February 2, 1988, the plaintiff and CT Page 4662 the defendant entered into an open listing agreement which provided for a commission equal to 5 percent of the agreed sales price. The asking price was $800,000. The term of the listing agreement was from February 2, 1988 through August 31, 1988. Through the efforts of the plaintiff and its agents, the defendant entered into a sales agreement with Starter Home Associations, of which Mr. Henry Racki was a partner. The sales agreement was prepared by the defendant's attorney and executed within the effective dates of the listing agreement. Mr. Racki claimed to be a real estate broker and paragraph seven of the sales agreement provided that the commission would be equally divided between the plaintiff and Mr. Racki. The plaintiff did not participate in the drafting of the contract; nevertheless, it accepted the terms to avoid losing the sale. Despite some confusion, a final closing was held on June 14, 1988, at which time title was transferred by warranty deed. The deed was recorded in the Bozrah land records. The actual price paid at closing was $750,000 due to an error in estimated acreage. As a result of the price reduction, the commission was reduced from $20,000 to $18,750. At the closing, the plaintiff received $9,375. The balance was to be paid on final subdivision approval. On April 11, 1991, subdivision approval was granted with modifications to meet the requirements of the town regulations. Upon this approval, sums owed to the plaintiff were due and payable. There was no agreement that the payment of the balance was contingent on receipt of additional funds by the defendant. The defendant testified that the commission should have been paid in full at the time of the closing.
Based on these facts, the trial referee reached the following conclusions: that the listing agreement comported with General Statutes § 20-325a(b) and was executed within the period specified in the contract; that the plaintiff found a buyer "ready, willing and able" to purchase the property at a price acceptable to the defendant; and that the plaintiff was entitled to costs, attorney's fees and interest.
On December 27, 1993, the defendant filed an objection to the acceptance of the trial referee's report. The defendant objects to the following findings: that the listing agreement was enforceable under General Statutes § 20-235a(b); that a meeting of the minds existed as to the balance of the commission; that final subdivision approval was obtained on April 11, 1991; that the payment of the balance of the CT Page 4663 commission was contingent upon the receipt of additional funds; that the plaintiff was entitled to its full commission. The defendant further objected to the referee's failure to find that the purchaser did not submit a subdivision plan with modifications. The defendant also objected to the following rulings: the failure to admit a promissory note from the purchaser to the defendant as a full evidentiary exhibit and the failure to admit a document of a commission splitting agreement in evidence. The defendant further argues that the referee abused his discretion by awarding interest and attorney's fees.
On January 26, 1994, the plaintiff filed a motion for approval of the findings of the trial referee.
Discussion
"The rules of practice governing procedure in matters referred to committees are also applicable to [trial referees]" (Citation omitted.) Seal Audio, Inc. v. Bozak, Inc., 199 Conn. 496,502, 508 A.2d 415 (1986); see also [Dillis v. Town ofEnfield], 210 Conn. 705, 557 A.2d 517 (1989). An "attorney referee is simply a factfinder" and has no power to render a judgment. [Rostenberg-Doern Co. v. Weiner], 17 Conn. App. 294,299, 552 A.2d 827 (1989). Nevertheless, attorney referees are permitted to express their views on questions of law. Id. Although a trial court is bound by the referee's finding of facts, it is not bound by the referee's conclusions of law. [Dillis v. Town of Enfield], supra, 713. The "trial court has the power to render whatever judgment appropriately follows, as a matter of law, from the facts found by the attorney trial referee." Id.
Pursuant to Practice Book § 438, within two weeks after the filing of the referee's report, either party may file a motion to correct. [Harbor Construction v. D. V. Frione Co.], 158 Conn. 14, 19, 255 A.2d 823 (1969). The court will not review any findings of fact or rulings made by the referee unless those rulings are first raised in a motion to correct. Id., 20-21. Pursuant to Practice Book § 439, if the referee fails to correct a report, the moving party may file exceptions, within ten days. [Garofalo v. Argraves], 147 Conn. 685,687, 166 A.2d 158 (1960). The court will generally not consider an exception unless its subject matter has been submitted in a motion to correct. [Naftzger v. Naftzger Kuhe,CT Page 4664Inc.], 26 Conn. App. 521, 525, 602 A.2d 606 (1992). A party who fails to file a motion to correct waives any right to attack the subordinate factual findings. Id., 528.
Within two weeks after the filing of a report, or a motion to correct the report, an objection to the acceptance of the report may be filed. Practice Book § 440. An objection is addressed to the referee's legal conclusions while an exception challenges its findings of fact. See [Dorsen v. Kay], 13 Conn. App. 645,649, 538 A.2d 1080 (1988); cf. [Ross v. Renzulli],9 Conn. App. 87, 89-90, 516 A.2d 149 (1986); [Ruhl v. Fairfield],5 Conn. App. 104, 106, 496 A.2d 994 (1985). "[A]bsent a motion to correct and subsequent exception to the report, the trial court, in ruling on the objection [is] limited to determining whether the subordinate facts were sufficient to support the ultimate [legal] conclusions." [Ruhl v. Fairfield], supra, 106.
"The court shall render such judgment as the law requires upon the report as it may be corrected." Practice Book § 443. The court's authority in reviewing the referee's findings is limited. See [Dillis v. Town of Enfield], supra. The trial court may not "ferry the case" or find additional facts, or reject facts found unless a material fact has been found without evidence or the referee has failed to find an admitted or undisputed fact. Id., citing Practice Book § 439. Further, the trial court may not engage in "fact finding contrary to the report of the referee." Id. If the referee's findings are accepted the court's function is to determine whether the conclusions are "legally and logically correct" and whether they find support in the facts found by the referee. [Bernard v. Gershman], 18 Conn. App. 652, 656, 559 A.2d 1171
(1989), citing Practice Book § 440. "Where the evidence is in conflict, its probative force is for the trier of fact to determine." Id. The award of attorney's fees where applicable and the allowance of interest is within the court's discretion. See [Appliances, Inc. v. Yost], 186 Conn. 673, 279, 443 A.2d 486
(1982); [State v. Stengel], 192 Conn. 484, 487, 472 A.2d 350
(1984).
The only objections the court may review are the findings that the listing agreement comported with General Statutes § 20-525a(b) and that the referee abused his discretion in awarding excessive attorney's fees and interest. The defendant's remaining objections relate to the findings of subordinate facts or evidentiary rulings which are not CT Page 4665 reviewable as the defendant did not first file a motion to correct or exception, pursuant to Practice Book §§ 438 or 439. Therefore, the court must accept these findings of fact and determine whether those facts support the "ultimate facts" or legal conclusions.
General Statutes § 20-325a(b) provides that no person shall bring an action to recover a real estate commission unless
 (a) unless such acts or services were rendered pursuant to a contract or authorization from the person for whom such acts were done or services rendered. To satisfy the requirements of this subsection any such contract or authorization shall (1) be in writing, (2) contain the names and addresses of all the parties thereto, (3) show the date on which such contract was entered into or such authorization given, (4) contain the conditions of such contract or authorization and (5) be signed by the owner or an agent authorized to act on behalf of the owner only by a written document executed in the manner provided for conveyances in section 47-5, and by the real estate broker or his authorized agent.
To determine that the listing agreement was enforceable under General Statutes § 20-325a(b), the referee applied the statute to the findings of fact and concluded that the evidence satisfied the statute. The referee's conclusion that the agreement was enforceable under General Statutes § 20-325a was proper and supported by the facts.
To determine the award of attorney's fees and interest, the referee examined the plaintiff's attorney's invoice, determined whether it was reasonable, and reduced the requested amount by $1,754.08. Because there are no material errors in the referee's finding regarding attorney's fees and interest, the award of attorney's fees and interest was proper and is supported by the facts.
In the present case, the referee recommended that the plaintiff recover damages from the defendant in the amount of CT Page 4666 $9,375, plus interest at the rate of 10 percent per annum thus far totalling $2,421.87, with a per diem rate of $2.20. Also, that the plaintiff be awarded $5,011.87 in attorney's fees plus $281.70 for costs of collection. Lastly, the referee recommended that judgment enter in favor of the plaintiff as to all counts of the defendant's counterclaim.
The court does hereby accept the findings and recommendations of the referee and enters judgment accordingly.
Leuba, J.