[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This case involves a suit on a promissory note and a claim of a fraudulent conveyance. The plaintiff, First County Bank, alleges in the first count of its complaint that on January 17, 1989, the defendant, Jeda, Ltd. (Jeda), executed a promissory note payable to the plaintiff for $150,000, which was due and payable on February 1, 1990, and that it had not been paid when due. In the second count of its complaint, the plaintiff alleges the other defendants, Jeffrey R. Glass and Daniel L. Galasso, Jr., executed written personal guarantees of said note, and that the guarantors had failed to repay the plaintiff for its loan to Jeda. In the third count of the complaint, the plaintiff claims that on August 10, 1988, Galasso transferred his interest in certain realty located on Haviland Road, Stamford, to his wife, Suzanne Galasso, in order to defraud the plaintiff, among others, and to prevent the plaintiff from collecting on the above referred to promissory note. In addition to money damages, the plaintiff sought a judgment setting aside the conveyance from Galasso to his wife.
The defendants filed an answer denying that the conveyance described in the complaint was fraudulent as claimed by the plaintiff. The plaintiff subsequently withdrew the suit as to the defendant Glass.
This case was referred to Attorney Dennis G. Eveleigh, an attorney trial referee, in accordance with General Statutes §52-434 (a) and Practice Book § 428 et seq. The referee conducted a trial and then filed his report containing the following findings of fact: (1) that Jeda, a partnership comprised of Glass and Galasso, executed a revolving loan agreement promissory note on January 17, 1989, defaulted on the loan, and did not appear for trial; (2) that Galasso guaranteed repayment of said loan, which he has not done; (3) that on August 10, 1988, Galasso executed a quit-claim deed to his wife of the family residence on Haviland Road, and that prior thereto he had consulted an attorney who recommended this transfer for "estate planning purposes" in order to equalize the respective estates of CT Page 3980 Galasso and his wife; (4) that there was a delay in obtaining approval of this transfer to Mrs. Galasso from Mechanics and Farmers Savings Bank, which held a mortgage on the subject premises, and hence the deed, which was executed by Galasso on August 10, 1988, was not recorded until September 7, 1988, as soon as approval was obtained from Mechanics and Farmers on September 2, 1988; (5) between the date when the quit-claim deed was executed and the date when it was recorded, Galasso provided the plaintiff with a personal financial statement dated August 30, 1988, which indicated that (a) his assets were $1,490,000, including ownership of the Haviland Road premises, which Galasso valued at $700,000, less a mortgage of $275,000, or a total equity of $45,000; (b) his liabilities were listed at $355,000, plus "contingent" liabilities, which were listed as "construction loans," in the amount of $2,910,000, which were not in default at that time; and (c) his net worth, according to the financial statement, was $1,136,000; and (6) when the loan from the plaintiff to Jeda closed on January 17, 1989, the plaintiff did not seek from Galasso a personal financial statement more current than the one he executed for the plaintiff on August 30, 1988, and that the plaintiff did not allege in its complaint that there were any fraudulent misrepresentations by Galasso on his financial statement.
The attorney trial referee concluded on the basis of the above findings of fact that: (1) Galasso received no consideration from his wife for the transfer to her of the Haviland Road premises; (2) there was no evidence of fraudulent intent on the part of either Galasso; (3) the plaintiff did not prove by clear and convincing evidence that the conveyance to Mrs. Galasso rendered Galasso insolvent or unable to pay his debts at the time of said transfer; and (4) his contingent liabilities, which were not in default at the time of the transfer, should not be considered in determining whether Galasso was insolvent.
The plaintiff moved to correct the report pursuant to Practice Book § 438. It sought corrections to reflect that: (1) Galasso signed a personal financial statement that as of August 30, 1988, indicated that he still owned the Haviland Road premises, although he had previously, on August 10, 1988, quit-claimed his interest therein to his wife, Suzanne Galasso, and that the plaintiff relied on this representation of ownership in accepting a personal guarantee from Galasso; (2) Galasso had a continuing obligation to make his financial statement accurate CT Page 3981 because the statement itself provides that the plaintiff "may consider this statement as continuing to be true and correct until a written notice of a change is given to you by the undersigned," and that Galasso never advised the plaintiff at the time of the loan to Jeda in January, 1989, of the conveyance to his wife; (3) the plaintiff acted in a commercially reasonable manner in accord with industry practices in relying on a financial statement that was less than six months old at the time the loan to Jeda closed; and (4) contingent liabilities should be considered in analyzing Galasso's financial condition, citingTachten v. Boyarsky, 122 Conn. 465, 190 A. 869 (1937) andPeick v. Pension Benefit Guaranty Corporation,724 F.2d 1247 (7th Cir. 1983), as authority that such liabilities adversely effect one's solvency status.
In response to the motion to correct filed by the plaintiff, the attorney trial referee declined to make any changes in his report or recommendation that judgment enter in favor of the Galassos with respect to the claim of a fraudulent conveyance. The referee did, however, discuss the claims asserted by the plaintiff, and correctly pointed out that the complaint does not allege a cause of action in fraud or misrepresentation with respect to the personal financial statement executed by Galasso, nor does the complaint allege a failure of Galasso to update his financial statement by disclosing the quit-claim deed to his wife. The complaint seeks to set aside the deed to Mrs. Galasso on the ground that it was a fraudulent conveyance. The issue in this regard, according to the referee, was whether the conveyance rendered Galasso unable to meet his financial obligations. The referee reiterated his factual finding that even subtracting the value of the Haviland Road premises, Galasso still had over $400,000 of assets at the time of his financial statement, and also when the loan to Jeda closed.
As to the claim that contingent liabilities should be counted in determining Galasso's financial status, the referee found as a fact that these liabilities were not in default at the time of the loan to Jeda, and he added that the plaintiff had not presented any evidence as to the amount of security Galasso might have posted to secure such "construction loans" and therefore such security could be a higher amount than the contingent liabilities themselves.
The plaintiff then filed exceptions to the referee's report pursuant to Practice Book § 439. The exceptions repeat the CT Page 3982 claims asserted in its motion to correct. The file, however, does not indicate that the plaintiff included a transcript with its exceptions, as required by Practice Book § 439. This means that the referee's findings of fact must stand uncorrected and may not be disturbed. Without a transcript, these findings cannot be evaluated to determine whether they find support in the transcript. Hence, the referee's report must be viewed as if no exceptions had been filed. A failure to file valid exceptions constitutes in effect a waiver of the right to "attack the subordinate factual findings contained in the report." SeeBernard v. Gershman, 18 Conn. App. 652, 655,559 A.2d 1171 (1989) (holding that a failure to file a motion to correct waived the right to challenge the referee's subordinate factual findings). When a trial transcript is not furnished to the court, it can be assumed that such a transcript is not "crucial" to the evaluation of the referee's report. Beizer v. Goepfert, 28 Conn. App. 693,706-07, 613 A.2d 1336, cert. denied, 224 Conn. 901, 615 A.2d 1049
(1992).
As to this court's scope of review of an attorney trial referee's report regarding the facts of a given case, the Supreme Court has stated that: (1) the trial court may not "retry the case"; and (2) a court may not find additional facts or reject facts found by the referee unless, in the words of Practice Book § 439, "a material fact has been found without evidence or the [referee] has failed to find an admitted or undisputed fact, or has found a fact in such doubtful language that its real meaning does not appear." Dills v. Enfield, 210 Conn. 705,714, 557 A.2d 517 (1989). Furthermore, a trial court may not engage in "fact-finding contrary to the report of the referee." Id., 716; see also Practice Book § 440.
In addition to determining whether "there was . . . evidence to support the attorney trial referee's factual findings," the second task of the reviewing court is to decide whether "the conclusions reached were in accordance with the applicable law."Thermoglaze, Inc. v. Morningside Gardens. Co., 23 Conn. App. 741,746, 583 A.2d 1331, cert. denied, 217 Conn. 811, 587 A.2d 153
(1991). See also Practice Book § 440; Bernard v. Gershman,supra, 18 Conn. App. 656.
The file, however, indicates that the plaintiff did not file objections to the acceptance of the referee's report, Practice Book § 440, meaning that the plaintiff has waived any right to claim that the referee's conclusions were not properly reached CT Page 3983 on the basis of the subordinate facts that were found, or that there were errors in rulings on the admission of evidence or in other rulings. Rostenberg-Doern Co. v. Weiner, 17 Conn. App. 294,301, 552 A.2d 827 (1989). In Rostenberg-Doern,
where the plaintiff did not file objections to the referee's report, the court said the failure to "follow the appropriate procedural guidelines" resulted in it being "precluded from reviewing [plaintiff's] claim." Id.
In any event, after hearing the evidence, the attorney trial referee found that Galasso was not rendered unable to pay his obligations when he transferred the family home to his wife. The conveyance in this case occurred in 1988, and thus preceded the enactment of Public Act No. 91-297, codified as General Statutes § 52-552a, the Uniform Fraudulent Transfer Act. Therefore, this case is governed by General Statutes § 52-552, which provided prior to its repeal in 1991 that: "[A]ll fraudulent conveyances . . . made or contrived with intent to avoid any debt or duty belonging to others, shall, notwithstanding any pretended consideration therefor, be void as against those persons only . . . to whom such debt or duty belongs."
A leading case interpreting § 52-552 is Tyers v. Coma,214 Conn. 8, 570 A.2d 186 (1990), which held that: "The party seeking to set aside a conveyance as fraudulent bears the burden of proving either: (1) that the conveyance was made without substantial consideration and rendered the transferor unable to meet his obligations; or (2) that the conveyance was made with a fraudulent intent in which the grantee participated." Id., 11. The court went on to state that: "[F]raudulent intent must be proved, if at all, by clear, precise and unequivocal evidence. This standard of proof applied to intra-familial conveyances." Id.
With respect to counting contingent liabilities, the two cases cited by the plaintiff are not applicable to this case. The court in Tachten v. Boyarsky, supra, 122 Conn. 471, held that a creditor possessing a contingent liability is protected under the fraudulent transfer statute. ("The undertaking of an indorser of a negotiable promissory note . . . is as much prohibited from making a voluntary conveyance that has the effect to defraud the holder of a note indorsed by him as if he were the principal"). The Tachten case did not, however, address whether a non-defaulted liability must be included in an analysis of the solvency of a debtor at the time of an allegedly fraudulent CT Page 3984 conveyance. In Peick v. Pension Benefit Guaranty Corp.,
supra, 724 F.2d 1247, the plaintiff challenged the facial constitutionality of the provisions for withdrawal liability in the Multiemployer Pension Plan Amendments Act of 1980. The case found injury and therefore standing for the plaintiffs because the act holds employers liable on the plan even after they withdraw from the plan, therefore injury results from "employer members which were seriously contemplating withdrawal from the plan and which would have to disclose their potential liabilities on their financial statements, thus affecting their credit ratings." Id., 1259. The court relied on affidavits from the parties in making this determination, which was confined to liabilities incurred as a result of the act.
Based on the standard of review in Dills v. Enfield,
supra, 210 Conn. 714, the court finds that this conclusion and resulting recommendation that judgment be rendered for the Galassos on the fraudulent conveyance count is not illegal or illogical. To the contrary, in the words of Practice Book § 440, the referee's recommendations were "properly reached on the basis of the subordinate facts found." No material error in the referee's report has been found, or any other sufficient reason why the report is unacceptable. See Practice Book § 443.
The referee recommended that judgment should enter in favor of the plaintiff against the named defendant, Jeda, the exact amount of which to be determined by this court upon the filing by the plaintiff of a current affidavit of debt, which would include interest, late charges, etc., as provided in said promissory note. The referee also recommended that judgment enter against the plaintiff and in favor of the Galassos in connection with the claim of a fraudulent conveyance. These recommendations are accepted and judgment enters in accordance therewith, except to add that judgment in the same amount entered in the first count against Jeda should also enter against defendant Daniel Galasso, Jr., who, according to the referee, personally guaranteed payment of said note.
Costs are to be taxed by the clerk.
So Ordered.
Dated at Stamford, Connecticut, this 26th day of April, 1996.
William B. Lewis, Judge CT Page 3985