[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This case involves a dispute between a contractor and the owner of a project known as Forrest Green Homes, located at 655 Palisade Avenue in Bridgeport. The plaintiff, Andrews Construction Company, Inc., alleges in the first count of its complaint that on November 9, 1993, it entered into a written contract with the defendant, Spanish American Development Agency, Inc., in which it agreed to construct 24 units of elderly housing and related common areas for the defendant as owner of the subject premises, and that there remains an unpaid balance of $59,223. In the second count of its complaint, the plaintiff alleges that it furnished materials and rendered services in connection with the construction of said units, until September 30, 1995 and that there was a balance due of $59,223, representing the reasonable value of such material and services based on the theory of an implied contract.
The defendant denied the material allegations of the complaint and asserted three special defenses based on the plaintiff's alleged violations of the Connecticut State Building Code. The defendant also asserted a fourth special defense alleging that the plaintiff had waived any right to further money because it signed a release at the time of the last payment it received.
The case was referred to Attorney Kenneth B. Povodator, an attorney trial referee, in accordance with General Statutes § 52-434 (a) and Practice Book § 19-2. The attorney referee conducted a trial and then submitted a report pursuant to Practice Book § 19-4. The referee made the following findings of fact: (1) the plaintiff and the defendant entered in into a written contract for the construction of a multi-family residential dwelling; (2) the defendant paid everything to the plaintiff that was due on the contract including a number of "contract change orders," with one exception, change order #45; CT Page 8457 (3) change order #45 was performed adequately by the plaintiff but not paid by the defendant; (4) the defendant did not prove any of its special defenses alleging violations of the State Building Code or that the plaintiff had signed any kind of release; and (5) the plaintiff is entitled to 18% interest on the unpaid change order #45, based on the wording of the order itself, which had been signed by a representative of the defendant and the architect.
The attorney referee concluded, on the basis of the above findings of fact, that: (1) the defendant had breached its contract with the plaintiff by failing to pay for change order #45; (2) judgment should enter in favor of the plaintiff for the face amount of change order #45, $51,661,[1] plus interest at 18% per year as set forth in change order #45, which amounts to $18,597 as of November 22, 1997, plus per diem interest of $25.83 to the date of judgment.[2]
The defendant, pursuant to Practice Book § 19-12, moved to correct[3] the referee's report in 28 respects, which can be summarized as follows: (1) the signatures on the change order were not authenticated, and the person who signed on behalf of the defendant was not authorized to do so; (2) the entire contract was not submitted at the trial, and therefore, the referee could not find that a breach thereof had occurred; (3) the plaintiff did not prove its case by a fair preponderance of the evidence: (4) the plaintiff failed to prove that any delays in completing the contract were the defendant's fault; (5) the plaintiff failed to prove that it was entitled to any interest and failed to provide any basis for the calculation of interest; (6) the change order in question did not provide for interest and was in the amount of $51,661, not $59,223 as stated by the attorney referee; (7) the plaintiff failed to prove when the project started and when it was completed, and therefore, the liquidated damage clause cannot be enforced; and (8) the liquidated damages clause in the change order cannot be enforced because the plaintiff did not suffer any actual damages.
In response to the motion to correct filed by the defendant, the attorney referee declined to change his recommendation that judgment enter on the complaint for the plaintiff in the amount of $51,661, plus interest. The referee did, however, comment on each item of the defendant's motion to correct and his responses can be summarized as follows: (1) the referee agreed that the contract of November 9, 1993 that was admitted in evidence, was CT Page 8458 an "abridged" contract in the sense that it did not contain, for example, the specifications and drawings, but that this was immaterial to the resolution of this case, which involved change order #45, (2) the signatures on the change order, which were challenged by the defendant, had been authenticated by the plaintiff, and that the person who signed change order #45, Ramon Larracuente, the executive director of the defendant, had signed other change orders on behalf of the defendant, all of which had been paid by the defendant; (3) the referee reiterated that the defendant's architect and representative had both signed off on change order #45: (4) the plaintiff had proved its case, and the defendant had not proved its special defenses; (5) the plaintiff's right to obtain 18% interest, including damages for delay, was contained in the change order itself; (6) the contract and change order refer to the defendant being entitled to liquidated damages in the event completion of the contract was due to the plaintiff's delay; (7) the plaintiff did not make a claim for liquidated damages; and (8) the claim for delay damages was reasonable based on testimony from the plaintiff and the approval of such damages in a delay in paying a previous change order.
In accordance with Practice Book § 19-13, the defendant then filed exceptions to the referee's report.[4] The exceptions filed by the defendant contain the same claims asserted in its motion to correct.
This court's scope of review of an attorney referee's report was reiterated by the Supreme Court in Elgar v. Elgar,238 Conn. 839, 679 A.2d 937 (1996). There, the court held that, "[a] reviewing authority may not substitute its findings for those of the trier of the facts. This principle applies no matter whether the reviewing authority is the Supreme Court . . . the Appellate Court . . . or the Superior Court reviewing the findings of . . . attorney trial referees. See Practice Book § 443. . . . The factual findings of a [trial referee] on any issue are reversible only if they are clearly erroneous. . . . [A reviewing court] cannot retry the facts or pass upon the credibility of the witnesses. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Citations omitted; internal quotation marks omitted.) Elgar v. Elgar, supra,238 Conn. 848-49; see also Romano v. Derby, 42 Conn. App. 624, 626, CT Page 8459681 A.2d 387 (1996) ("The trial court, as the reviewing authority, may render whatever judgment appropriately follows, as a matter of law, from the facts found by the attorney trial referee.").
Thus, according to Elgar v. Elgar, supra, 238 Conn. 839, this court has two tasks to perform in reviewing an attorney referee's report. The first task is to determine whether the "referee's findings of fact were supported by the evidence." Id., 845. The second task is to ascertain whether "the conclusions drawn therefrom were legally and logically correct." Id.; see alsoRomano v. Derby, supra, 42 Conn. App. 628.
Regarding the first task of determining whether there is support in the record for the factual findings of the referee, the transcript indicates that the witness for the plaintiff, its president, testified that: (1) his company had performed the work required by change order #45 but the defendant had not paid for this work; (2) he recognized the signature of Larracuente because he had signed most of the previous 44 contract change orders; and (3) Larracuente had acknowledged that the sums of money due for that last change order "were due."
The defendant did not file objections to the referee's report as authorized by Practice Book § 19-14.[5] This means that the defendant has waived any right to claim that the referee's conclusions were not properly reached on the basis of the subordinate facts that were found or that there were errors in the rulings on the admission of evidence or in other rulings.Rostenberg-Doern Co. v. Weiner, 17 Conn. App. 294, 301-02,552 A.2d 827 (1989). In Rostenberg-Doern, where a party did not file objections to the referee's report, the court said that the failure to "follow the appropriate procedural guidelines" caused the court to be "precluded from reviewing [the plaintiff's] claim." Id., 302.
Since the referee's findings of fact are supported by the record, such findings must stand uncorrected. It was also noted that the defendant did not present any evidence in its own behalf.
The only remaining issue concerns whether the referee's conclusions follow legally and logically from the underlying facts. This determination is required because a reviewing court is obliged to consider whether "the conclusions reached were in CT Page 8460 accordance with the applicable law." Thermoglaze, Inc. v.Morningside Gardens, Co., 23 Conn. App. 741, 746, 583 A.2d 1331, cert. denied, 217 Conn. 811, 587 A.2d 153 (1991). See also Practice Book § 443 ("[t]he court shall render such judgment as the law requires upon the facts in the report. . . .").
The referee determined that: (1) the plaintiff had proved that it had completed change order #45; (2) the defendant did not prove its special defenses regarding the State Building Code or the execution of a release; and (3) the payment of interest was agreed upon by the parties in a duly executed change order signed by an authorized representative of the defendant and the defendant's architect. The referee's ultimate conclusion that the plaintiff should collect on change order #45 follows legally and logically from these underlying facts. Romano v. Derby, supra,42 Conn. App. 628.
Based on the standard of review outlined in Elgar v. Elgar, supra, 238 Conn. 848-49, the referee's recommendations are accepted. No material error in the referee's report has been found, and there is no other sufficient reason for rendering the report unacceptable. See Practice Book § 19-17.
Accordingly, as to the plaintiff's complaint, judgment is entered in favor of the plaintiff to recover from the defendant the sum of $51,661, plus interest in the amount of $24,563.73 to the date of judgment, for a total recovery of $76,224.73. Costs shall be taxed by the office of the chief clerk in accordance with General Statutes § 52-257 and Practice Book § 18-5.
So Ordered.
Dated at Stamford, Connecticut, this 13th day of July, 1998.
William B. Lewis, Judge