[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This case was referred to a fact finder pursuant to Practice Book § 23-52, et seq. A trial was held and the fact finder made findings of fact pursuant to Practice Book § 23-56; he also made certain conclusions of law. At page 7 et seq. of his decision, the fact finder entitled his comments as "conclusions of law." The conclusions in bold faced type state that the plaintiffs sustained their burden that the defendant repossessed the motor vehicle which was the subject of the action (p. 7); therefore, a violation of the Retail Installment Act was proven (p. 8) and the Uniform Commercial Code was established (p. 8) since the requisite notices of repossession were not given. The fact finder further concluded, however, that the plaintiffs did not meet their burden of proving that the Connecticut Unfair Trade Practices Act was violated.
The defendant has objected to the fact finder's conclusions of law arguing that a fact finder has no authority to make conclusions of law. The plaintiffs' response seems well taken in light of Practice Book § 23-56(b) which provides that: "The fact finder may accompany the finding of facts with a memorandum of decision including such matters as the fact finder may deem helpful in the decision of the case." Besides what is a "fact"? This whole case comes down to whether a "repossession" in fact took place here — that is what determines if previously mentioned statutes apply. The fact finder found that there was a repossession apparently accepting the plaintiffs' view that for a repossession to occur, the motor vehicle need not come into the actual possession of a credit union or bank but repossession can be established by acts or steps taken to indicate control or dominion over a chattel — i.e. constructive repossession. Such acts or steps are "facts" and would establish the fact of constructive possession if they were to be found. For example, in Lamplighter Electric, Inc. v. Brown,1995 Ct. Sup. 3986
(Judicial District of Danbury, 1995), the trial court accepted the fact finder's finding that the plaintiff corporation had prior dealings with the defendant in his individual capacity and not just with his corporation — therefore, the fact finder concluded a monetary award should be made against the defendant personally. The finding of the prior dealings between the parties did not exist in a vacuum but were necessarily intertwined with the legal conclusion that the individual defendant, because of the nature of the prior dealings, could not take CT Page 9840 advantage of the corporate status of his company to avoid personal liability. How is that different here from the fact finder saying that repossession did occur? or to put it another way, to facilitate the purposes the fact finder procedure was meant to accomplish the court will delete or not consider that phrase in the report reading "conclusions of law" and accept the previously quoted finding of repossession labeled as a "conclusion, " as a finding of fact. Similarly, it appears uncontested that no notice was given of any repossession — the defendant having denied it occurred — so that the fact finder's conclusion that the previously mentioned statutes were violated is dictated if, in fact, "repossession" did occur.
Now the court will attempt to deal with the objections raised to the findings. The court has read the entire transcript of the hearing before the fact finder and will make some general observations. In Scotts ofWisconsin v. RS Dist. Inc., 1993 Ct. Sup. 6958 (Judicial District of New Haven), Hodgson, J. defined the law in this area concerning the judge's review of the report of the fact finder. Citing Wilcox Trucking v.Mansour Builders, Inc., 20 Conn. App. 420 (1989), she stated that "in reviewing the findings of a court-appointed fact finder the Superior Court conducts a review subject to the same standards that apply to review by the Supreme Court of a trial court judgment or review of the findings of an attorney trial referee; see Rosenberg — Doern Co.v. Weiner, 17 Conn. App. 294, 299 (1989). The Appellate Court held inWilcox Trucking at pp. 424-25 that the reviewing court may not correct findings of fact to make them consistent with its own reading of the record but should overturn the findings `only when they are clearly erroneous.' The court stated that where there is sufficient evidence to support the findings of the fact finder, and in the absence of a determination that the findings are unreasonable, illegal or clearly erroneous as to facts or reasonable inference that may be drawn from them, the findings should not be overturned, id. Pomarico v. GaryConstruction, Inc., 5 Conn. App. 106. . .". cf. Century 21 A. Francia Trivali, Inc. v. Gerald Violette, et al, 1996 Ct. Sup. 3967 (J.D. Hartford, Aurigemma, J.). In Lamplighter Electric, Inc. v. Brown, supra, it was also said that "Although the fact finder's conclusions of law are not binding on this court . . . the court `may not substitute its [factual] findings for those of the trier of facts.'" Judge Aurigemma inCentury 21 applied both admonitions — she accepted the findings of fact made by the fact finder but disagreed with his decision that the plaintiff real estate broker was entitled to receive a commission because the fact finder did not take into account a statute that provides a broker must be licensed to receive a commission. Therefore, the judge did not send the matter to a new fact finder but entered judgment in favor of the defendants. CT Page 9841
The central question presented by this case is whether a repossession of a vehicle can occur without the bank or other party holding a security interest actually taking physical possession of the car. or perhaps to put it another way, do the Retail Installment Act or the UCC require actual physical possession to be taken before the notice requirements of that act become operative? Neither side spent a great deal of time analyzing the problem from this perspective. "Repossession" is not defined in either statute. The Retail Installment Sales Finance Act discusses "Repossession" in § 36a-785. Subsection (a) talks in terms of a "retaking" of the "goods" in question. It states the goods "shall be retaken by legal process" and when a motor vehicle is involved and repossession is taken without the buyer's knowledge "the local police department shall be notified."
The UCC in § 42a-9-503 talks about the secured party's right to take possession after default of a condition of the security agreement. Again, the statute says "in taking possession," the secured party can proceed without judicial process if this can be done "without breach of the peace or may proceed by action." All of this has the ring of actual physical retaking but the concept of repossession must be viewed in light of the notice provisions of both acts which basically allow the consumer to redeem on his or her property or be informed of any disposition of the property all of which would be directly related to the amount of any deficiency judgment that the secured party may eventually be seeking. Notice is provided for in § 36a-785 (B) of the Retail Installment Sales Finance Act and § 42a-9-504 of the UCC.
It would defeat the ameliorative purposes of these acts sought to be effectuated by the notice provisions, if repossession were to be narrowly defined as requiring an actual physical retaking. In other words, if such a position were adopted, the protections of these two acts would not apply in any case where the buyer does not have physical possession of the vehicle or in any case where the buyer does not choose to exercise possession or control of the goods and this is not part of a plan to defeat the creditor's security interest. Here, the plaintiffs were not in physical possession of their vehicle through no fault of their own, it was involved in an accident, presumably immobile and the defendant creditor did not have to physically retake the vehicle to protect its security interest and the value of such interest. But that does not mean the security holder, such as the defendant, can take steps consistent with control or dominion over the vehicle such as by declaring it has repossessed the same and by making a claim to its carrier based on such repossession. After all, a deficiency judgment is the end result of the repossession process.
That this is how the acts should be interpreted is, for the court at CT Page 9842 least, underlines by the questioning of Mrs. Vanwormer. She was asked why she did not have the vehicle repaired, why she did not get an estimate. She responded that she did not do those things because she "was waiting for the credit union to let [her] know what they wanted [her] to do." Well, while she was waiting, and from plaintiff's counsel's perspective, actions were being taken by the defendant consistent with a claim of control over the car, storage costs at the garage were going up, making any thoughts of repair economically senseless even before it could be ascertained if repair was practically possible. That is why the notice provision should be automatically applied whenever the creditor takes steps consistent with the exercise of dominion or control of secured property. It reduces the risk of economic waste, but more importantly, it provides that notice be given so that consumers can protect their interest in the disposition of the property whenever the secured party exercises control over goods not in the buyer's possession. In other words, if the disposition of the property does not satisfy the monies still owing on the underlying loan, the creditor will go after the buyer for a deficiency judgment. Notice is also necessary under § 38a-785 (c) because the consumer should have a right to consider the possibility of redemption. Besides, when the car was turned over to the garage, it had a salvage value that assumedly was bargained over — the buyers certainly would have an interest in that disposition of the property which can only be protected by compliance with statutory notice requirement.
Turning to the actual findings of fact, the defendant makes a general attack on practically all the findings that sometimes mix questions of law with fact issues. As to the first finding, the defendant notes that it states the plaintiff husband or his wife owned the vehicle — the defendant protests that this is confusing because it does not know to whom it will be obligated. Reading the Retail Installment Contract, the court concludes this is not confusing at all — "or" is not used in the sense of one or the other, take your pick, but indicates both parties are owners. The finder of fact was merely referring to the language of the Retail Installment Act where the husband signed as "buyer" and the wife as "co-buyer."
As to Finding 8, the defendant argues that the finding that the plaintiffs were not in default on their car loan supports a finding that there was no repossession since the defendant was not entitled to repossess. The finding only states the plaintiffs were not in "monetary default." But the point appears to be that the defendant treated the matter as a default for nonpayment. In fact, the defendant has brought suit for a deficiency judgment which is an action consistent with their claim to their insurer and the characterization of that claim as based on repossession. Indeed, the defendant affirmatively alleged repossession in CT Page 9843 their suit for a deficiency judgment.
Finding 9 refers to the defendant's collection letter to the plaintiffs and the defendant notes there is no mention of repossession in this April 1996 letter — that is hardly surprising where the claim is made that there was, in fact, a constructive possession and the whole basis of the claim is that no statutory notice was given. Also, the defendant makes reference to the handwritten note at the bottom of the form letter — it refers to "your" car, meaning the car of Mrs. Vanwormer. But then it says, not to worry, we can file a claim with our insurance company and maybe we can get you some money. In Findings 10 and 11, the fact finder refers to that claim to its own carrier made by the defendant and indeed to the request by its carrier for the "date of repossession." Suffice it to say that even accepting the defendant's thesis that a claim could have been made under the policy absent repossession its carrier certainly thought there was repossession, why did it request the date? The fact that the present credit manager could locate nothing in the file indicating there was a response to this inquiry about any date of repossession does not indicate there was no response. In any event, the findings cannot be read in isolation — at or around the time the defendant made a claim to its carrier it wrote to the car dealer on July 10, 1996, that the car had been repossessed (Finding 12)[1] and on June 14, 1996, had an "affidavit of repossession" prepared (Finding 15). Whether or not the affidavit was "used," all of this activity at or around the time of the defendant's insurance claim and receipt of money from its own carrier for damage to this car indicates that it was taking the position that it, in fact, had repossessed the vehicle and represented such to the outside world including its own carrier through its claim.
Finding 13 is objected to on the grounds that it "states that the credit union determined that it would be disadvantageous for it to recover possession of the plaintiffs' vehicle," i.e. physical taking. The defendant argues that this finding is diametrically opposed to a conclusion that the credit union nonetheless repossessed the plaintiff's vehicle. This objection is based on the assumption the court accepts the notion that "repossession" requires actual physical taking — it does not.
Finding 14 is objected to on the basis that the finding states the defendant released its interest in the vehicle and a release of a security interest in the vehicle is inconsistent with repossession. But the finding says nothing about releasing a "security" interest, it states that there was no evidence as to the manner in which the interest was released and what the meaning of release was. In its objection the defendant takes it upon itself to define "release" and say this occurred CT Page 9844 when the title to the vehicle was turned over to the garage. But how did the defendant acquire title in the first place to turn it over to the garage? Would an acquisition of title by the defendant be consistent with its various representations that it had repossessed the car? As to Finding 15, that finding notes that the defendant prepared an "Affidavit of Repossession," the finding goes on to note that Mr. Yule, the defendant's witness, testified that the "affidavit of repossession" in the defendant's file would have been turned over to the motor vehicle department if there had, in fact, been a repossession. But the fact that the affidavit was prepared can hardly be used as grounds to conclude no repossession took place in light of other events that were proceeding along at this time — the communication to the dealer that a repossession had taken place, the insurance claim where its own company wrote the insured defendant and asked for the date of repossession prior to paying the claim.
Nothing in the evidence suggests Finding 15 to the effect that an affidavit of repossession had been prepared in itself is not supported by the evidence or is irrelevant.
Finding 16 notes the defendant's lawyer sent a collection letter to the plaintiffs and no mention of repossession was made. This to the defendant contradicts the finding of repossession. On the contrary, that is why we are here — no notice of repossession was ever given.
Finding 17 alludes to the fact that in April of 1997, a complaint was filed against the plaintiffs by the defendant for a deficiency judgment. In that complaint, it is alleged that on June 14, 1996, the plaintiff proceeded to repossess the car. This is known as an admission, it is not binding on the trier, it can be explained, but some relevance can be attached to it especially in the context of other findings made in this case. The defendant seeks to say that at trial the fact finder somehow realized this was all a mistake and in Finding 19 the fact finder conceded as much. This is not really the case — the fact finder in his findings merely set forth the defendant's position at trial and at trial he was merely recapitulating the testimony of Mr. Yule to the effect that mention in the suit of repossession was a mistake. It was probably inappropriate for the fact finder to do this, something similar was done in Finding 15 — findings should set forth facts found without listing evidential embellishments. The court cannot conclude, however, from all this that the admission should be and was afforded no significance nor can it even say this particular finding was a prerequisite to the general finding that there was a repossession.
As to Finding 21 on "abandonment" the fact finder merely indicated that apart from Yule's affidavit, there was no testimony from Yule, that, in CT Page 9845 fact, the plaintiffs had abandoned the car. Despite the objection that the plaintiffs conceded they abandoned the car, it is not clear as to how the fact of such abandonment figures into the issues involved in this case — when did it take place, in response to what, was it raised as a defense, how could it be raised as a defense in a lack of notice case?
The objections to the findings are overruled and judgment should enter in accordance with the recommendations of the fact finder.
Corradino, J.